[Civ. No. 18457. Second Dist., Div. Three. Feb. 4, 1952.]

ALTADENA COMMUNITY CHURCH (a Corporation) et al., Respondents, v. STATE BOARD OF EQUALIZATION, Appellant.

Edmund G. Brown, Attorney General, and Bayard Rhone, Deputy Attorney General, for Appellant.

Roland Maxwell and Paul H. Marston for Respondents.

VICKERS, J. pro tem.—This case comes before us by reason of an appeal by the State Board of Equalization from a judgment of the superior court directing the issuance of a peremptory writ of mandate ordering that board to deny a "petition of the respondent [therein], Venetian Dining Room & Gardens, Inc., a corporation, for an on sale general liquor license filed in 1950 for the premises described as 2556 North Lake Avenue, Altadena. . . ." The court declared that the granting of the 1950 application of the corporation by the board was an abuse of discretion because of the proximity of three churches and a youth center to the premises in question, and also that the decision of the board in 1948 in denying a similar application was res judicata. The matter came before the lower court upon a petition by the respondent churches for a writ of mandate. It was heard upon the records and files of the appellant board. No other evidence was introduced before the court.

It appears from the record that the premises in question had a general liquor license from 1939 to 1945, a beer and wine

license from 1946-1948 and a similar license from 1948-1950. One Charles Ingrao testified that he had owned the premises in question since 1944. Whether or not he operated during all that time as a corporation is not clear although he testified he had a partner in 1946 and 1947 and that the restaurant was closed for awhile in 1947 because of litigation between him and that partner. At the close of that litigation a new building was erected and thereafter Mr. Ingrao operated alone.

The premises of the restaurant have at all times been within a recognized business district and located on the east side of Lake Avenue about 100 feet south of Foothill Boulevard. On June 21, 1948, when the 1948 application was denied, the respondent Altadena Community Church was located on the north side of Foothill Boulevard east of Lake Avenue and about 235 feet from the restaurant. At that time the St. Marks Episcopal Church was located on the south side of Foothill Boulevard and about 300 feet east of the restaurant. There was also a youth center operated by one of these churches and located on Foothill Boulevard about 220 feet west of the restaurant. The only substantial change in physical conditions between 1948 and 1950 was the erection by the respondent First Church of Christ, Scientist, of a church building on the south side of Foothill Boulevard. The west side of the lot upon which it is located is separated from the rear of the restaurant lot by a 21-foot alley. The west side of the rear portion of the church building is about 50 feet from the outdoor gardens where the restaurant serves meals during suitable weather. The nearest establishment where spiritous liquors may be served is approximately 2,000 feet from the restaurant.

At the time of denying the 1948 application the appellant board made the following order: "It is ordered that the application mentioned in the said proposed decision be denied on the grounds that the issuance of an on-sale general license for the premises of the applicant would be contrary to public welfare and morals, it appearing to said Board that said premises are located within the immediate vicinity of churches." Shortly thereafter it issued the applicant a beer and wine license for its premises.

The 1950 application was opposed by the three churches. Over 500 citizens of the area signed petitions of protest. The sheriff of Los Angeles County likewise filed a protest. An extensive hearing was had before the hearing officer of the board. At the conclusion thereof he recommended denial of

the application in the following language: "Premises are in the immediate vicinity of three churches and a Youth Center building. Issuance of license would be contrary to public welfare and morals. Penalty or Recommendation:

" 'That protests be sustained.' "

At the hearing before the appellant board the only evidence offered or received was that which had been received by the hearing officer. At the conclusion of argument the board made the following finding and order: "That applicant's premises are located in a business district and consist of a high-type restaurant with an outdoor dining area in the rear thereof; that at said premises and since 1948 applicant now holds and has held an on-sale beer and wine license; that heretofore and from 1946 until 1948 an on-sale beer and wine license was issued for said premises to persons other than applicant; that for four years prior to 1946 an on-sale distilled spirits license was issued for said location to persons other than applicant; that the church building of the First Church of Christ which was completed in February, 1950, is about 50 feet from the outdoor dining area of applicant's premises; that the Saint Marks Episcopal Church is on property contiguous on the east to that of the First Church of Christ; that across East Foothill Boulevard from said two churches is located the Altadena Community Church, on the property of which said church conducts a youth center; that said Altadena Community Church is located about 235 feet by air line from applicant's premises; and that applicant's premises are not so located with respect to said churches and youth center as to cause a moral hazard to said churches or said youth center.

"Determination of issues presented: that because of the facts as found aforesaid it would not be contrary to public welfare and morals to issue an on-sale general license to the applicant at the premises aforesaid.

"Wherefore, it is hereby ordered that the application herein be granted effective on notice hereof."

The appellant board was authorized and empowered to control the licensing of the liquor industry by article XX, section 22 (adopted in 1934) of the state Constitution. That section reads in part as follows: "The State Board of Equalization shall have the exclusive power to license the manufacture, importation and sale of intoxicating liquors in this State, . . . and shall have the power, in its discretion, to deny or

revoke any specific liquor license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals.'' It is interesting to note that the Constitution gives the board the ''exclusive power to license'' without any specified limitation while it declares the board may deny or revoke a license ''. . . if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals.'' In denying the 1948 application the appellant acted under the latter part of the sentence while in granting the 1950 application it acted under the first part. The Legislature indicated the same purpose by the passage of section 13 of the Alcoholic Beverage Control Act (1935) 2 Deering's California General Laws, Act 3796. Section 13 reads as follows: ''The board is specifically authorized to refuse the issuance of on-sale retail licenses for premises located within the immediate vicinity of churches, hospitals, schools and children's public playgrounds.'' This section while authorizing the denial of a license because the premises involved are within the immediate vicinity of churches, etc. does not forbid the granting of a license if the premises are so located.

It had been definitely established that the power of a court is very limited in reviewing the decisions of the board. In the case of *Covert* v. *State Board of Equalization*, 29 Cal.2d 125 at page 131 [173 P.2d 545], the Supreme Court said: ''. . . [The board] has specifically been given quasi judicial, or adjudicating power, that is, the right to make determinations of fact which are not subject to reexamination in a trial de novo in the superior court.'' At page 132 the court said: ''It would appear, therefore, from the foregoing authorities, that the decisions of the board are final, subject to review for excess of jurisdiction, errors of law, abuse of discretion and insufficiency of the evidence, and that where there is error the matter ordinarily should be remanded to the board for further proceedings.'' In the case of *Hansen* v. *State Board of Equalization*, 43 Cal.App.2d 176 at page 180 [110 P.2d 453], the court said: ''The constitutional provisions mentioned above are designed to give the Board broad discretionary powers in the matter of granting or refusing to grant licenses of this character. Whether or not 'good cause' for the denial of the license existed, was a matter for determination by the Board, and not by the courts.''

Respondents concede that the superior court could not substitute its discretion for that of appellant. They contend,

however, that that court could, as it did, determine that the appellant had abused its discretion in granting the license in question and that such abuse was shown by the location of the premises within the immediate vicinity of churches.

While the matter of abuse of discretion was within the court's power of determination we cannot agree that the single fact that churches are in the immediate vicinity of the premises establishes such an abuse of discretion. Neither the Constitution nor the Alcoholic Beverage Control Act nor any reported case called to our attention so declares. As we pointed out section 13 of the above act authorizes a denial of a license on that ground but does not require it. By the adoption of section 22, article XX of the Constitution, the people of California declared that the manufacture and sale of liquor was a matter of right, as was its purchase and consumption, and left to the appellant board the exclusive power to regulate the enjoyment of such rights consistently with the public interest.

Whether or not the board abuses its discretion in exercising this power in a given case can only be determined by an examination of all the facts and circumstances surrounding the exercise thereof. There have been many attempts to define abuse of discretion. In the case of *Sharon* v. *Sharon*, 75 Cal. 1, at page 48 [16 P. 345] the court said: ''In a legal sense, discretion is abused whenever, in its exercise, a court exceeds the bounds of reason,—all the circumstances before it being considered.'' Bouvier's Law Dictionary, volume I, page 94, defines abuse of discretion as ''A discretion exercised to an end or purpose not justified by and clearly against reason and evidence.'' After a consideration of all the facts and circumstances we cannot say that there was an abuse of discretion in the instant case under either of the above or any other definition called to our attention.

Some of the facts and circumstances considered by the appellant board were stated by Mr. Bonelli, the member from this district, as follows: The premises had been licensed almost continuously for 11 years prior to the hearing, the first six years having had an ''on sale'' general license; that one if not all of the protesting churches had moved into the area during this 11 years; at all times the premises were properly conducted and for the last five years under the principal direction of Mr. Ingrao, the president of the applicant corporation: shortly before the 1948 hearing Mr. Ingrao had dissolved the former partnership and proposed to operate the establishment alone; that it was Mr. Bonelli's understanding at that

time that while a general on-sale license would be denied, a beer and wine license would be issued, that the board would wait and see how well the premises were operated under that license by Mr. Ingrao without his partner, and that he might be entitled to a general license later; that Mr. Ingrao has so conducted the premises during the two years since the 1948 denial as to justify the 1950 application being granted; that none of the churches protesting had shown any interference with their operations by the applicant; that it didn't appear that the right to serve cocktails with meals, in addition to wine and beer, would create any such interference; that this establishment would be the only one within a 2,000 foot radius where the residents of the community could enjoy their constitutional right to have a drink of spiritous liquor with their meals; that they were entitled to be protected in that right. Mr. Bonelli concluded by saying that he recommended the granting of the license on the grounds that public convenience and necessity and welfare and morals required that the people of that area be given the same right to the availability of alcoholic beverages as was enjoyed by people in other areas. The facts so recited were pertinent and substantial and were supported by the evidence received. We cannot say as a matter of law that by adopting Mr. Bonelli's recommendation there was an abuse of discretion by the appellant board.

Respondents' contention that the denial of a similar license in 1948 was res judicata and compelled a denial of a similar license in 1950 is without support in the law. ■ The doctrine of res judicata as such applies only to the decisions of a judge or a court of competent jurisdiction (see Code Civ. Proc., § 1908; *Panos* v. *Great Western Packing Co.*, 21 Cal.2d 636, 637 [134 P.2d 242]). ■ While an administrative agency may be bound by its final determination of a fact, and lacks the power to rehear or reopen, such determination only applies to the time at which, and the proceeding during which such determination was made (see *Empire Star Mines Co.* v. *California Emp. Com.*, 28 Cal.2d 33, 48 [168 P.2d 686]; *Aylward* v. *State Board of Chiropractic Examiners*, 31 Cal.2d 833 [192 P.2d 929]; *Waterbury Sav. Bank* v. *Danaher*, 128 Conn. 78 [20 A.2d 455].) In the Waterbury Sav. Bank case the defendant Administrator of the Unemployment Compensation Act, from 1937 to 1939, designated the plaintiff bank as exempt from the payment of taxes under the act. In 1939 the defendant changed his mind and attempted to collect such taxes for the

past two years as well as for the current year. The Supreme Court ruled that he could change his mind as to plaintiff's liability for future taxes but not for past taxes. During the course of its opinion the court said: "The right of the defendant as an administrative official to change his decision for due cause, in so far as concerns a change restricted to the assessment of contributions to fall due for some period in the future, is not involved in the present inquiry, and if it were would not be open to question . . .; and upon the situation shown by this record the attorney general's advice would constitute such cause. The vital inquiry in the present case is whether such a change can be given retroactive effect. The serious practical objection to holding that it can is obvious. To so decide would mean that the defendant by changing his ruling after the lapse of a long period of years, during which the plaintiff had gone upon the assumption that it was exempt, could suddenly impose upon it the necessity of paying the back contributions for these years with the unwarranted hardship which that would involve. This is not a result which commends itself, and it should be avoided if this is possible and in consonance with sound legal principles. The desired outcome cannot be supported, however, upon the theory that the defendant's act, in granting exemption to the plaintiff originally as he did, amounted to a decision which, under the rule of res judicata, could not later be reversed. That doctrine is not applicable to the defendant's action as an administrative official in this case but relates only to decisions rendered by a court of competent jurisdiction. . . . Nevertheless, it is true that a broad ground of public policy underlies this doctrine. . . . Recognizing this as also the underlying reason in the case of administrative rulings, although the doctrine of res adjudicata was not applicable, we have not hesitated upon grounds of public policy to curb the right of an administrative board to change its decision. . . . Where it appears that it is against public policy that an administrative officer should change a decision with retroactive effect, it is the court's right and duty to curb his powers so as to serve that policy."

The people in their wisdom have given appellant board the exclusive power to determine under what circumstances it is or is not contrary to public welfare and morals to issue a liquor license. Such a determination is frequently a difficult one and not subject to hard and fast rules. The presence of churches in the vicinity of the premises in question is not in itself necessarily determinative. Different conclusions may prop-

erly be reached at different times or under different circumstances. The board is wisely left free to act upon each application for a license as it comes before it.

Since it appears that the appellant board acted within its jurisdiction and did not abuse its discretion as a matter of law, that there is substantial evidence supporting its decision, and that its 1948 decision was not res judicata the court below erred in issuing its writ of mandate.

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied March 31, 1952. Shenk, J., and Edmonds, J., were of the opinion that the petition should be granted.