[Civ. No. 16986. First Dist., Div. One. Sept. 25, 1956.]

SARA MERCURIO et al., Appellants, v. DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL et al., Respondents.

George C. Carmody for Appellants.

Edmund G. Brown, Attorney General, and Charles A. Barrett, Deputy Attorney General, for Respondents.

BRAY, J.—Appellants, owners of an on-sale liquor license at "Murphy's Club," Pittsburg, were accused and found guilty by the State Board of Equalization of violating subdivisions (a) and (b) of section 24200, Business and Professions Code, rule 143 of the board, and article XX, section 22, Constitution, in that they permitted female employees to accept alcoholic beverages purchased on the premises.[1]

On a review by the superior court of the proceedings before the board the court found that the decision of the Department of Alcoholic Beverage Control[2] was supported by the weight of the evidence and denied the writ of mandate petitioned for. The petitioners appeal.

[1] They were also charged with the operation of a stud poker game but the hearing officer found in their favor on this charge and it was dismissed.

[2] The Board of Equalization after its decision was succeeded by the Department of Alcoholic Beverage Control. For convenience we will refer to the "board's" action.

## QUESTIONS PRESENTED

1. Do the board findings support the decision? (a) Must a proprietor *knowingly* permit violations? (b) Did the board find that appellants' actions were contrary to public welfare and morals?

2. Is rule 143 unconstitutional?

3. Was there proof that the drinks were alcoholic?

4. Was the analysis of the contents of certain drinks admissible?

5. Are the trial court's findings sufficient?

## FACTS

Four board officers testified that each on two separate occasions respectively purchased drinks at appellants' premises for one or more cocktail waitresses admittedly employed there. There were three separate dates involved, and on two of them appellant Joseph Mercurio was on the premises. If the drinks were alcoholic there is ample evidence in spite of Mercurio's testimony that he had instructed the waitresses not to drink while working and had never seen them doing so, to justify the finding that appellants permitted the waitresses to accept alcoholic beverages from the customers.

1. *Board Findings.* (a) Knowledge.

The accusation charged appellants with *knowingly* permitting the waitresses to accept alcoholic beverages. The findings merely found that appellants permitted such to be done, omitting the word "knowingly." Appellants contend that this omission is fatal and that a liquor license may not be revoked unless the owner knowingly permitted the violation charged. As findings upon immaterial issues are not required (*Renfer* v. *Skaggs,* 96 Cal.App.2d 380, 383 [215 P.2d 487]), it becomes necessary to determine whether "knowingly" is a necessary element of "permitting" in this case.

Section 25750, Business and Professions Code, authorized the board to "make and prescribe such reasonable rules as may be necessary or proper to carry out the purposes and intent of Section 22 of Article XX of the Constitution . . ." Pursuant to that authority the board adopted rule 143.[3]

---

[3] "No on-sale retail licensee shall permit any female employee of such licensee to solicit, in or upon the licensed premises, the purchase or sale of any alcoholic beverage, any part of which is for, or intended for, the consumption or use of such female employee, or to permit any female employee of such licensee to accept, in or upon the licensed premises, any alcoholic beverage which has been purchased or sold there, any part of which beverage is for, or intended for, the consumption or use of any female employee."

Section 24200, Business and Professions Code, makes violating by a licensee or permitting the violation of any rule of the board adopted pursuant to section 25750 and other provisions of law, grounds for suspension or revocation of a license.

In neither rule 143 nor section 24200 is there any requirement that the "permitting" be "knowingly" done. In *Swegle* v. *State Board of Equalization*, 125 Cal.App.2d 432 [270 P.2d 518], in upholding the revocation of a liquor license on a charge that the owner permitted the premises to be used as a disorderly house, the court held that the permission did not have to be a "knowing" one. The case dealt with section 58 of the then Alcoholic Beverage Control Act, and the court stated that the word "permits" therein included "an unknowing consent" and that a licensee can be held to have permitted acts constituting a violence by a showing that the acts themselves took place. In our case, one of the licensees was present when most of the acts took place. The language of the Swegle case is particularly appropriate here (p. 438): "Appellant's agents were always present in the bar. It was said in *Mantzoros* v. *State Board of Equalization*, 87 Cal. App.2d 140, 144 [196 P.2d 657], that 'The licensee, if he elects to operate his business through employees must be responsible to the licensing authority for their conduct in the exercise of his license, else we would have the absurd result that liquor could be sold by employees at forbidden hours in licensed premises and the licensees would be immune to disciplinary action by the board. Such a result cannot have been contemplated by the Legislature. Even in the case of criminal statutes vicarious liability for the acts of employees is not unknown.' Therefore, whatever is permitted by appellant's agents must be attributed to her."

*Keane* v. *Reilly*, 130 Cal.App.2d 407 [279 P.2d 152], cited by appellants, is not opposed to this rule. There this court held that the alleged violation by the bartender had not been proved. The question of knowledge by the licensee was not involved. Nor is *Endo* v. *State Board of Equalization*, 143 Cal.App.2d 395 [300 P.2d 366], in point. There the court was dealing with section 24200.5, subdivision (a), Business and Professions Code, which expressly requires that the licensees "permitting" the illegal sale of narcotics must be "knowingly" done. The very fact that rules and laws providing for violations for which disciplinary action may be taken, provide that some violations must be "knowingly"

done and as to others the word "knowingly" is omitted, indicates that in the latter cases there is no requirement that the violations be knowing ones. ▇▇ "Knowingly" not being required in either rule 143 or section 24200, the use of that word in the accusation was immaterial and is not necessary to be found. The board's finding that appellants permitted the violation was sufficient.

(b) *Contrary to Public Welfare and Morals.*

▇▇ The board made no finding in so many words that appellants' acts or the violations were contrary to public welfare and morals.[4] The board found that appellants "violated Rule 143 issued in pursuance of Section 22 of Article XX of the Constitution of California and of the Alcoholic Beverage Control Act."[5] This, in effect, is a finding that the acts of appellants were contrary to public welfare and morals because by specifically adopting rule 143, the board was articulating the acts specified therein as being ones which the board felt were contrary to public welfare and morals. The rule was adopted to enable the board to exercise the powers conferred upon it by the Constitution. Moreover, it requires no argument to prove that permitting women employees of an on-sale liquor premises to accept alcoholic drinks purchased by patrons is contrary to the public welfare and morals.

2. *Constitutionality of Rule 143.*

▇▇ Appellants attack its constitutionality on the ground that the rule is too broad, covering, as they claim, a situation where, the premises being closed, a waitress accepts a drink from the licensee, or the waitresses at such time buy each other drinks. ▇▇ They contend that in considering the reasonableness of a statute, the manner in which it *might be* construed is to be considered, not merely the way it *is* construed. (Apparently appellants are contending that if one can conjure up some hypothetical situation as to which the rule might be unreasonable, the rule must be held unconstitutional in every case of facts actually before the court. They cite no authority to this effect.) That is not the rule. As said in *Max Factor*

[4] Article XX, section 22, of the Constitution provided that the board "shall have the power . . . to deny or revoke any specific liquor license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals."

[5] Appellants contend that the board actually found that they did not violate the Constitution section. However, a reading of the findings clearly shows that such finding dealt only with the charge of operating a stud poker game.

& Co. v. *Kunsman*, 5 Cal.2d 446, 468 [55 P.2d 177]: "Respondent presents several hypothetical situations under which enforcement of the act would be inequitable or difficult, or, perhaps, even unconstitutional. It is elementary, of course, that a statute may be invalid as applied to one set of facts, yet valid as applied to another. (*Dahnke-Walker Milling Co.* v. *Bondurant*, 257 U.S. 282 [42 S.Ct. 106, 66 L.Ed. 239].) The situations conjured up by respondent are not here involved, and respondent is limited in his attack to the application of the statute to the factual situation now before the court." We fail to see, and counsel has not pointed out, any respect in which rule 143 as applied to the facts of this case is either unreasonable or arbitrary. On the contrary, on the face of it, it is a very reasonable and necessary rule if taverns and the like are to be decently conducted.

Appellants further contend that because the Legislature enacted sections 25657 and 24200.5, subdivison (b), Business and Professions Code, it covered the field and that the board, even under the powers granted by section 22 of article XX, Constitution, and by section 25750, Business and Professions Code, could not prohibit actions of the licensee not prohibited by those sections. Section 25657 prohibits the employment of paying of hostesses or entertainers to procure or encourage the purchase of alcoholic beverages on the licensed premises or to employ or permit anyone to loiter in or about the premises to beg or solicit anyone to purchase any alcoholic beverage for the solicitor. The section was probably adopted to meet the B-girl situation. Section 24200.5, subdivision (b), Business and Professions Code, provides for revocation if licensee has employed anyone to solicit or encourage others to buy drinks. We find nothing in the law limiting the board's powers of termination of a license to the precise statutory grounds. It is clear from an examination of the Constitution and of section 25750 that the board has the broad power to determine what shall be "contrary to public welfare or morals" and to prohibit a licensee from doing or permitting on his premises any such acts.

 The rule has a reasonable relation to the legitimate ends for which the board was created; i.e., to have "exclusive power" to deny or revoke liquor licenses. It is in harmony with the purposes of the Alcoholic Beverage Control Act as declared by Business and Professions Code, section 23001, "for the protection of the safety, welfare, health, peace and morals of the people of the State, to eliminate the evils of . . . un-

lawful . . . selling, and disposing of alcoholic beverages, and to promote temperance in the use and consumption of alcoholic beverages.'' As to the question of arbitrariness of the rule insofar as it discriminates against female employees, the following statement in *People* v. *Jemnez* (1942), 49 Cal.App.2d Supp. 739, 743 [121 P.2d 543], is persuasive: ''The argument that the section forbidding women employees to mix drinks abridges the privileges and immunities of citizens and denies equal protection of the laws to those whose employment is prohibited, overlooks two fundamental propositions: (1) that the business here involved is one of privilege and not of right; and (2) that the classification of women with respect to mixing drinks is reasonable. When these two propositions are established . . . the force of the argument vanishes.''

The classification in rule 143 is reasonable in view of the harms that can result from the acts prohibited therein. In California females have been discriminated against in other situations relating to liquor: *Ex parte Hayes* (1893), 98 Cal. 555 [33 P. 337, 20 L.R.A. 701], prohibited sale of liquor in dance halls and theatres where women are to be present; *Foster* v. *Police Commissioners,* 102 Cal. 483 [37 P. 763, 41 Am.St.Rep. 194], prohibited saloon license if females are employed; *People* v. *King,* 115 Cal.App.2d Supp. 875 [252 P.2d 78], municipal ordinance prohibited female employee in an on-sale liquor establishment from drinking, dancing or mingling with patrons. See also Alcoholic Beverage Control Act, §§ 25655, 25656, 25657.

In 1954, article XX, section 22, was amended by adding to *the then provision* authorizing the board to revoke a license ''if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals,'' the following: ''or that a person . . . holding a license has violated any law prohibiting conduct involving moral turpitude.'' This amendment, argue appellants, indicates that the only violation for which a license could be revoked contemplated by the Constitution, is a violation of a law and not of a board rule. We fail to see the logic in this contention. It is obvious that, as amended, the Constitution provides for revocation if the continuance of the license would be contrary to public welfare or morals, which includes violations of board rules as well as laws dealing with liquor establishments, and for violations of any laws prohibiting conduct involving moral turpitude. The latter would include laws not expressly dealing with liquor establishments. That the board

is not restricted as contended, see *Moore* v. *State Board of Equalization,* 76 Cal.App.2d 758, 765 [174 P.2d 323].

Rule 143 is constitutional and valid.

### 3. *Alcoholic Drinks.*

Appellants contend that the evidence fails to show that the drinks consumed by the waitresses were alcoholic. While none of the officers tasted the drinks consumed by the girls, in each case an alcoholic drink (whiskey or vodka) was ordered either by the girl herself or by the officer, and a fifty cent charge was made for each drink. In some instances the girl's drink was poured out of the same bottle as the officer's drink. In other instances, the officer noted that the bottle from which the girl's drink was poured had on it a whiskey brand label, or that the drinks were poured from what appeared to be whiskey or vodka bottles. In some instances the officer testified that the girl got an alcoholic drink, for example, "She got a whiskey highball." In other instances, the testimony was that the drink was poured from a bottle having a federal strip stamp on it and appeared to be whiskey or vodka (whichever was ordered). In one instance the officer checked all the bottles "in the well" from one of which the girl's drink was poured and found that they all contained alcohol.

Of course, in the instances where the officer's and the girl's drinks were poured out of the same bottle, and the officer testified that the liquor was whiskey, no question could possibly arise that a finding that the girl's drink was whiskey is not supported. In all instances the drinks were poured from either whiskey or vodka bottles. This raises a presumption that the bottles contained what they purported to contain. Sections 25176 and 25177, Business and Professions Code, prohibit refilling a distilled spirits bottle or selling such spirits from a refilled bottle. There is a presumption that the law has been obeyed (Code Civ. Proc., § 1963, subd. 33), and that the person is innocent of crime or wrong. (Code Civ. Proc., § 1963, subd. 1.) "In a liquor case, the presumption that liquor is served when requested is not overcome by the presumption of innocence." (*Griswold* v. *Department of Alcoholic etc. Control,* 141 Cal.App.2d 807, 811 [297 P.2d 762].)[6] If the bartender were to serve soft drinks when alcoholic beverages were called for, then there would be a

---

[a] All legitimate and reasonable inferences must be indulged in support of the board's findings. (*Marcucci* v. *Board of Equalization,* 138 Cal. App.2d 605, 608 [292 P.2d 264].)

violation of section 382, Penal Code, which prohibits the sale of any article of drink, different from the one called for, without informing the purchaser of the difference. Thus, there is a disputable presumption that the drinks served were what were ordered. (See *Griswold* v. *Department of Alcoholic etc. Control, supra,* 141 Cal.App.2d 807, 811.) It is interesting to note that there is no denial in the evidence that the drinks served the girls were alcoholic. Moreover, appellant Joseph testified that when he found out through this accusation that these girls had been drinking on the job, he fired them. He apparently fired the bartender for the same reason. The evidence amply supports the finding on this subject.

4. *Analysis of Drinks.*

 Bottles containing three of the drinks sold waitresses were admitted in evidence over appellant's objections that the foundation was not laid. Officer Cowan testified to seizing the drinks, pouring them into bottles, sealing the bottles and pasting identifying slips on them. He then placed them in storage in Sacramento and later delivered them to the State Department of Public Health at Berkeley for analysis. The foundation was sufficiently laid.

Among the exhibits is the board's exhibit 4, which is a letter signed by an assistant Public Health Chemist of the Department of Public Health's Food and Drug Laboratory, and giving the analysis as to alcoholic content of the contents of the bottles above mentioned. We fail to find in the reporter's transcript any reference to this letter being offered or received in evidence. Apparently it was considered by the hearing officer, as it bears an exhibit number. Although hearsay it could have been admitted in evidence under the rule set forth in Government Code, section 11513, subdivision (c): "Hearsay evidence may be used for the purpose of supplementing or explaining any direct evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." The letter could have been used to supplement the other evidence in the case. Disregarding it entirely, there is still ample evidence to support the board's findings.

5. *Trial Court's Findings.*

 The court referred to every paragraph of the petition for writ of mandate and the answer thereto, and found that each paragraph was either true or untrue in its allegations. Appellants challenge this method. They cite, however, no

authority holding that this method is improper. "Usually the court adopted separate findings with respect to designated paragraphs of each particular count of the amended complaint declaring that all of the allegations therein contained 'are true.' In a similar manner the court also referred to designated paragraphs of the answer, finding that the statements therein contained which are in conflict with the allegations of the complaint 'are untrue.' This form of adopting general findings has been held to be sufficient. [Citations.] " (*Vaughan* v. *Roberts*, 45 Cal.App.2d 246, 258 [113 P.2d 884]; see also *Kennedy & Shaw Lbr. Co.* v. *S.S. Const. Co.*, 123 Cal. 584 [56 P. 457], and *Biurrun* v. *Elizalde*, 75 Cal.App. 44, 55 [242 P. 109].)

▉▉▉ They further contend that the court should have found specifically on each item of evidence in the case. For example, was the drink bought for girl "A" by officer "B" on July 22d alcoholic? No request for such detailed findings was made. The pleadings did not raise an issue as to each of the eight instances in which an officer testified that he purchased a waitress a drink. The issue was as to whether the evidence supported the findings to the effect that appellants permitted their waitresses to accept alcoholic beverages purchased on the premises. The court in addition to finding that each allegation of the petition and the answer thereto was either true or untrue, specifically found that the findings of the board were not only supported by substantial evidence but by the weight of the evidence, and that the evidence constituted good cause for revocation of the license.[7] We know of no requirement that in the absence of a request for a finding on a specific bit of evidence, the court is required to make any further findings than those made here.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied October 25, 1956, and appellants' petition for a hearing by the Supreme Court was denied November 21, 1956.

---

[7]Additionally, the findings contain a catch-all to the effect that all the allegations of the answer to the petition are true except as far as the same are inconsistent with the findings. This type of finding was held in *Krug* v. *F. A. Lux Brewing Co.*, 129 Cal. 322 [61 P. 1125], to be insufficient. Eliminating it entirely, the other findings are sufficient to support the judgment.