[L. A. No. 24423. In Bank. May 6, 1957.]

AUGUST MAURICE NARDONI et al., Appellants, v. F. BRITTON McCONNELL, as State Insurance Commissioner, etc., Respondent.

Bernard C. Brennan, William E. Cornell, Blase A. Bonpane and Hill, Farrer & Burrill for Appellants.

Edmund G. Brown, Attorney General, and Lee B. Stanton, Deputy Attorney General, for Respondent.

SPENCE, J.—Petitioners appeal from a judgment denying their petition for a writ of mandate. They had sought such writ to compel the Insurance Commissioner to set aside an order revoking and suspending their licenses.

Petitioner August Maurice Nardoni was a duly licensed bail agent, insurance agent, insurance broker, and life agent. Petitioner Brazell Nardoni was a licensed bail agent and insurance agent. They operated as partners in the bail bond business in Los Angeles, and each conducted a separate business in the other insurance specialties in which he was licensed. Petitioners Frank Earl Alexander and Charles August Archambault were licensed only as bail agents and were employees of the Nardonis. Separate accusations were filed against the four, charging them with numerous unlawful acts in the bail bond business. A hearing was had before a hearing officer, who thereafter issued his proposed decision. It was adopted by the Insurance Commissioner and pursuant thereto, all licenses held by the Nardonis were revoked and those held by Alexander and Archambault were suspended for three months. (Ins. Code, § 1731.) A petition for reconsideration was denied.

The licensees then filed their petition for a writ of mandate in the superior court, seeking to compel the commissioner to set aside his order of revocation and suspension. An alternative writ was issued; a trial was had, and findings and judgment were entered denying the petition. The court specifically found that all the findings of the hearing officer as adopted by the commissioner (being 30 in number) were justified and supported by the weight of the evidence. The violation in part concerned petitioners' recommendations of attorneys and assistance to the attorneys in preparing petitions for habeas corpus for the release of arrestees (Cal. Adm. Code, §§ 2077-2078); solicitation and negotiation for bail with persons not authorized by the arrestees (*ibid.* § 2079); arrangements with a certain police officer for obtaining information concerning arrests and jail commitments (*ibid.* § 2091); and failure to set forth correct information as to the source of knowledge leading to bail bond negotiations (*ibid.* § 2101). The court concluded

that the facts found justified the order of the commissioner as to each of the licensees, that there was no abuse of discretion, and that the licensees had been accorded a full and fair hearing. Accordingly, judgment was entered denying the writ and petitioners have appealed.

As grounds for reversal, petitioners contend: (1) the findings of the commissioner are not supported by the evidence and the court should have so found; (2) the court improperly excluded their proffered evidence as to good character and reputation; and (3) the penalty imposed was excessive. Our review of the record, however, convinces us that these contentions cannot be sustained.

■ The trial court was required to exercise its independent judgment in deciding the factual issues. (Code Civ. Proc., § 1094.5, subd. (c); *Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301, 308 [196 P.2d 20]; *Hohreiter* v. *Garrison,* 81 Cal.App.2d 384, 402 [184 P.2d 323]; 2 Cal.Jur.2d § 231, p. 385.) It did so and not only found expressly that the commissioner's findings were supported by the weight of the evidence but made its own findings which conformed with those of the commissioner.

The court had before it the entire record of the proceedings before the commissioner, which included the testimony of several witnesses in addition to a stipulation executed by the parties in order to expedite the hearing. The stipulation consisted of sixty pages, covering the testimony of some 27 witnesses, and 55 exhibits were attached. It provided in part: ''Where it is stipulated that if called a person would testify to certain facts, such stipulation is in lieu of actual testimony and is to be considered admitted without objection unless an objection on specified grounds is expressly reserved for the particular testimony in writing. . . . All facts recited herein as stipulations are agreed to be true and correct, and may be used in lieu of evidence, and are to be considered proven by competent evidence.'' It was also stipulated that the 55 exhibits were offered in evidence and were to be considered admitted without objection in the absence of a written objection upon some ground other than lack of foundation.

Petitioners challenge generally the sufficiency of the evidence to support the material findings, but with one exception hereinafter noted, they do not indicate wherein the evidence is deficient or what precise findings are attacked so that the merits of their objection may be determined. (See *Goldring* v. *Goldring,* 94 Cal.App.2d 643, 645 [211 P.2d 342].) However,

in view of petitioners' further claim that hearsay evidence was improperly admitted over their objection at the disciplinary hearing, the record of that hearing has been examined.

Petitioners properly maintain that hearsay evidence alone is insufficient to support the revocation of a license. (*Walker* v. *City of San Gabriel*, 20 Cal.2d 879, 881 [129 P.2d 349, 142 A.L.R. 1383]; *Kinney* v. *Sacramento etc. Retirement System*, 77 Cal.App.2d 779, 782 [176 P.2d 775].) However, Government Code, section 11513, subdivision (c), provides in part: ''The hearing need not be conducted according to technical rules relating to evidence and witnesses. . . . Hearsay evidence may be used for the purpose of supplementing or explaining any direct evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions.'' The parties' stipulation covering the testimony of numerous witnesses sets forth essential facts which were competent, material and relevant in support of the commissioner's decision and the subsequent court findings. A brief reference to a few of the principal charges will suffice to show that petitioners' objections to the alleged hearsay evidence cannot prevail.

One of the principal violations charged against the Nardonis was based on a so-called ''arrangement'' or conspiracy between the Nardonis and a certain police officer. According to the stipulated evidence, four arrestees would testify to facts tending to show that the Nardonis were receiving information from the police officer and were acting upon that information in contacting relatives of the arrestees and arranging for the prisoners' release on bail. These facts leave no doubt that the Nardonis and the police officer were working together under a prearranged plan and that the Nardonis were collecting bail fees as the result of such unlawful practices. The stipulated testimony of the same arrestees also indicates that the Nardonis recommended and arranged for the services of certain attorneys on behalf of the arrestees without authorization. In carrying out these unlawful transactions, it appears that Alexander and Archambault, as employees of the Nardonis, actively aided in the preparation of petitions for habeas corpus and other legal documents. The stipulated testimony of other arrestees shows that without their permission the Nardonis contacted their employers, solicited bail and negotiated for certain attorneys to handle their defense upon prescribed fee payments. On still another occasion, it appears that upon the representation of August Nardoni, an

indemnitor's agreement was signed by one acting in the belief that he was only witnessing a statement of an arrestee's release; that later the person so signing, when the bail was forfeited, was sued, and his automobile was attached and taken from his possession. It also appears that all four petitioners, in filing bail bond applications, falsified the source of their bail business and failed to recite their prearranged plan with the police officer for information leading to solicitation or negotiation of bail.

Thus it appears that there was ample competent evidence in the record from which it could reasonably be inferred that the alleged ''arrangement'' constituted the basis of a number of the bail transactions effected by the Nardonis and that they falsified the required records by stating that the source of their information leading to the bail solicitation was the arrestee or his relatives rather than the police officer. Petitioners did not testify either before the hearing officer or the court. In this regard, it is significant that petitioners' counsel at the time of suggesting the written stipulation stated : ''We are prepared to stipulate to virtually all of the facts in the Accusation. . . . We are not prepared as yet to stipulate as to the conspiracy accusation . . . it is our idea that as long as we are throwing ourselves on the mercy of the Commissioner that we will not offer any defensive matter. . . .''

It is true that some of the alleged objectionable testimony contained in the stipulation was of hearsay character but it was properly received in evidence. It was used only for the purpose of ''supplementing or explaining'' the other evidence concerning the conduct of petitioner and the parties with whom they were dealing. (Gov. Code, § 11513, subd. (c).) Our review of the evidence convinces us that it cannot be said that any finding was based solely on the alleged objectionable hearsay evidence.

Nor did the court err in rejecting petitioners' offer to introduce into evidence at the trial oral testimony concerning their general reputation and character. Petitioners Nardoni state that they have been in the bail bond business in Los Angeles for more than 30 years, during which time they have been respected businessmen and have rendered valuable services to the courts, attorneys and the public. Evidence of good reputation is admissible in some cases to rebut testimony of an incriminatory character. But here such evidence had no relevancy, for petitioners had practically admitted by virtue of the stipulation the acts constituting the numerous

violations charged. (See *People* v. *Green*, 217 Cal. 176, 183 [17 P.2d 730].) While such evidence might have been properly admitted at the disciplinary hearing for consideration of the commissioner in determining the nature of the penalty to be imposed, it was not material upon the trial of the mandamus proceeding in the superior court. The matter of fixing the penalty was not for the court but for the commissioner in the exercise of his discretion. (Code Civ. Proc., § 1094.5, subd. (e).)

 Petitioners finally contend that the penalty imposed was excessive. The Nardonis are particularly concerned with this contention. They argue that the stipulated facts established their guilt only of violations of bail bond regulations, that the bail bond business is peculiar to itself, and that any transgressions as bail agents would have no application to other branches of the insurance business so as to justify revocation of their general insurance, as well as bail bond licenses. But the insurance code subjects licensees to disciplinary action for violations without regard for any particular licenses that may have been issued thereunder. The standards of conduct and the prescribed measure of disciplinary action have a common statutory basis. (Ins. Code, § 1821.)

Numerous grounds for suspension or revocation of licenses are found in the several subdivisions of section 1731 of the Insurance Code. Among such grounds are facts establishing that the licensee has "engaged in a fraudulent practice or act or conducted his business in a dishonest manner" (subd. (d)); has shown "untrustworthiness in the conduct of his business or has by commission of a wrongful act or practice in the course of his business exposed the public or those dealing with him to the danger of loss" (subd. (e)); has "failed to perform a duty expressly enjoined upon him by a provision of this code, or has committed an act expressly forbidden by such a provision" (subd. (g)); has "aided or abetted any person in an act or omission which would constitute grounds for suspension, revocation or refusal of license to the person aided or abetted" (subd. (i)); or has "permitted any person in his employ to violate any provision of this code" (subd. (j)).

Upon substantial evidence, the court found that petitioners Nardoni had violated the cited subdivisions of section 1731. Petitioners Nardoni specifically contend that the evidence fails to sustain the finding of a fraudulent act or of business done in a dishonest manner, but the above-mentioned evidence con-

cerning the fraudulent representations made to the person signing the indemnitor's agreement is sufficient for that purpose. The court further found upon substantial evidence that petitioners Nardoni had violated numerous lawful regulations of the commissioner, including sections 2077, 2078, 2091 and 2101 of the California Administrative Code, and that the other petitioners had violated some of these sections. These regulations are authorized by section 1812 of the Insurance Code, and the violation thereof constitutes a proper basis for disciplinary action under section 1813 of the Insurance Code. (*Smith* v. *Downey*, 109 Cal.App.2d 745, 748 [241 P.2d 618].)

It thus appears that all these findings are on matters which are clearly grounds for disciplinary action, and the extent of the penalty was then for the commissioner to determine within his discretion. (Code Civ. Proc., § 1094.5, subd. (e).) The court concluded that the commissioner, in ordering the revocation of both the bail and insurance licenses of the Nardonis and the suspension of the bail licenses of their employees, Alexander and Archambault, had acted within his jurisdiction and had not abused his discretion. Accordingly, the court found no reason for granting a writ of mandate affecting the commissioner's decision. The record sustains the propriety of that adjudication. (*Olson* v. *Watson*, 143 Cal.App.2d 343, 351 [300 P.2d 35]; *Black* v. *State Personnel Board*, 136 Cal. App.2d 904, 912 [289 P.2d 863].)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., and Traynor, J., concurred.

McComb, J., did not participate herein.

SCHAUER, J., Dissenting.—I am in general accord with the reasoning and conclusions expressed for the District Court of Appeal by Presiding Justice Shinn and concurred in by Justices Wood (Parker) and Vallée, as reported in (Cal.App.) 302 P.2d 902. As stated in the opinion of that court, "There was no finding that either of the Nardonis had engaged in a fraudulent practice or had conducted his business in a dishonest manner. There was no inherent dishonesty in their transgressions as bail agents. They were not shown to have been incompetent or untrustworthy with respect to their clients. As to section 1731(g) they were guilty of violations of their duties as bail agents but these violations were of

duties that could have no connection with the duties of insurance agents. Section 1731 must be given reasonable application. As to paragraph (g) of that section which was applied by the commissioner and the court it is to be noted that the acts and omissions which were relied upon were those particularly set forth as violations of the Administrative Code and not the Insurance Code. With respect to paragraphs (i) and (j) of the section we think they should not be held applicable to acts or omissions of employees of a bail agent with respect to violations of the stringent and technical requirements of the Administrative Code applicable to such employees. The violations charged against Alexander and Archambault consisted of the failure to keep proper records as to the identity of persons with whom they negotiated for bail bonds and as to Archambault that he negotiated for bonds with persons who had not been authorized in writing by the arrestees to negotiate. These acts were not in violation of the Insurance Code.

"Our conclusion is that there was no proof and no finding of facts which would justify the revocation of the licenses of the Nardonis other than their licenses as bail agents."

For the reasons developed by the District Court of Appeal I would reverse the judgment in the parts specified by that court and remand the cause for further proceedings.

Appellants' application for a rehearing was denied June 4, 1957. Schauer, J., was of the opinion that the petition should be granted. McComb, J., did not participate therein.