[S. F. No. 20102.    In Bank.    June 12, 1959.]

THOMAS W. MARTIN, as Director of the Department of Alcoholic Beverage Control, Respondent, v. ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD OF THE STATE OF CALIFORNIA, Defendant and Appellant; MARTIN BERT HALEY, Real Party in Interest and Appellant.

Edsel W. Haws, Chief Counsel, Charles P. Just, Associate Counsel, Foley & Foley and James W. Foley, for Appellants.

Edmund G. Brown and Stanley Mosk, Attorneys General, and Wiley W. Manuel, Deputy Attorney General, for Respondent.

SPENCE, J.—This is an appeal by Martin Bert Haley, the licensee, and also by the Alcoholic Beverage Control Appeals

Board (hereinafter called the Appeals Board) from a judgment of the trial court granting a writ of mandate directing the Appeals Board to affirm the decision of the Department of Alcoholic Beverage Control (hereinafter called the Department) revoking the general on-sale liquor license theretofore issued to Haley. For a general discussion of the respective powers conferred by article XX, section 22, of the Constitution upon the Department and the Appeals Board, reference is made to our recent decisions in *Martin* v. *Alcoholic Beverage Control Appeals Board,* Sac. 7040, *ante,* page 238 [340 P.2d 1], and *Martin* v. *Alcoholic Beverage Control Appeals Board,* L. A. 24698, *ante,* page 259 [341 P.2d 291].

In 1942 Haley applied for and received an on-sale liquor license for premises known as the Brite Spot in San Jose, of which he was then the sole owner. In either 1942 or 1943, Haley entered into an oral arrangement with one Frank Mendoza for the operation of the business as a partnership. Thereafter, each contributed money, exercised authority in running the business, and shared in the profits. They represented the business to be a partnership for the purpose of applying for business loans and insurance policies, and in preparing income tax returns. In 1953, on advice from the sales tax division, they obtained a sales tax permit in the names of both partners. Each testified that in 1953 they inquired from someone in the liquor division of the Board of Equalization whether they should obtain a liquor license in the partnership name, and that they were advised that this was not necessary. On the application for a renewal license each year from 1943 through 1955, only Haley signed his name as sole owner of the business, though the form indicated that in the case of a partnership, the renewal application should be signed by each partner.

In April 1955, the Department filed an accusation against Haley charging him with violations of certain sections of the Alcoholic Beverage Control Act because of the undisclosed ownership of Mendoza in the business over the years 1943 to 1955. The hearing officer found that the accusation was true, that Haley had violated sections 23300, 23355, 23951, and 23953 of the Alcoholic Beverage Control Act (as now numbered in the Bus. & Prof. Code), and that grounds for suspension or revocation of the license under the provisions of section 24200, subdivisions (a), (b), and (c) of the act had been established. He recommended that the license be revoked, and the Department adopted his recommendation. Haley

appealed to the Appeals Board. The board upheld the Department on all issues except the penalty, which it found to be disproportionate to the offense found and to be arbitrary as a matter of law; and it reversed the decision with directions to the Department to reconsider the penalty imposed.

The director of the Department then filed in the superior court a petition for a writ of mandate. Following the trial, judgment was entered granting a writ of mandate directing the Appeals Board to vacate its decision reversing the Department's order and to affirm the Department's decision revoking Haley's on-sale license.

Section 23300 of the Business and Professions Code provides that no person shall perform any act which a licensee may perform under the authority of a license unless the person is authorized to do so by a license issued by the Department. Section 23355 provides that the license issued by the Department authorizes the person to whom issued, and no others, to exercise the rights and privileges specified, at the premises for which issued. Section 23951 provides that the application for a license shall contain "in the case of a copartnership, the names of the individual partners." Section 23953 requires that such application "be signed by each of the partners."

As hereinafter appears, the principal question argued by all parties relates to the power of the Appeals Board to reappraise the propriety of the penalty imposed where the Department has properly found upon substantial evidence that the licensee is subject to some disciplinary penalty. The record indisputably shows that Haley was not the sole owner of the business during the years in question, and that the failure to disclose the existing partnership on any of his renewal applications over a period of at least 12 years constituted repeated violations of the act. Upon this premise the Department argues that the offense committed was legally sufficient to justify revocation, and that the Appeals Board did not have the power to interfere with the penalty so imposed by the Department.

As here pertinent, the 1954 amendment to article XX, section 22, of the Constitution provided: "The department shall have the power, in its discretion, to . . . suspend or revoke any specific liquor license if it shall determine for good cause that the . . . continuance of such license would be contrary to public welfare or morals. . . . Review by the board of a decision of the department shall be limited to the questions

whether the department has proceeded without or in excess of its jurisdiction, whether the department has proceeded in the manner required by law, whether the decision is supported by the findings, and whether the findings are supported by substantial evidence in the light of the whole record. . . . When the order reverses the decision of the department, the board may direct the reconsideration of the matter in the light of its order and may direct the department to take such further action as is specially enjoined upon it by law, but the order shall not limit or control in any way the discretion vested by law in the department. Orders of the board shall be subject to judicial review upon petition of the director or any party aggrieved by such order.''

█ Where the question of the scope of judicial review has arisen in mandamus proceedings, it has been held that the propriety of the penalty imposed by an administrative agency is a matter vested in the discretion of such agency, and that its decision thereon will not be disturbed unless there has been a clear abuse of discretion. (*Nardoni* v. *McConnell*, 48 Cal.2d 500, 507 [310 P.2d 644] ; *Bonham* v. *McConnell*, 45 Cal.2d 304, 306 [288 P.2d 502] ; *Griswold* v. *Department of Alcoholic Bev. Control*, 141 Cal.App.2d 807, 812 [297 P.2d 762] ; *Altadena Community Church* v. *State Bd. of Equalization*, 109 Cal.App.2d 99, 104, 106-107 [240 P.2d 322].) █ The statutory provision defining the scope of the judicial inquiry into the validity of an administrative decision expressly declares that the court's ''judgment shall not limit or control in any way the discretion legally vested'' in the administrative agency. (Code Civ. Proc., § 1094.5, subd.(e).) By a parity of reasoning, the same limitation is applicable to the power of the Appeals Board in reviewing the propriety of the Department's decision on the penalty, when the Constitution has placed the discretion in the Department (art. XX, § 22).

█ While the Department made no specific finding that the continuance of Haley's license would be ''contrary to public welfare'' (Const., art. XX, § 22), its finding that Haley had repeatedly violated the above-cited sections of the Alcoholic Beverage Control Act was tantamount thereto. (*Mercurio* v. *Department of Alcoholic etc. Control*, 144 Cal.App.2d 626, 631 [301 P.2d 474].)

█ Haley contends that sections 23951 and 23953 of the Business and Professions Code relate only to original applications, and that the failure of a partner to sign an application

for renewal is not a violation of those sections as charged against him. There is no merit in this contention, as those sections obviously relate to all applications. Furthermore, the renewal application form preliminarily recited that the "undersigned hereby certifies that there have been no changes in the material facts set out in the original application," and below the signature line, there was the note that "in the case of a partnership the renewal shall be signed by each of the partners." Haley was charged with violation of the sections requiring disclosure of the partnership, and it was found on undisputed evidence that the business was in fact a partnership. ▮ Section 24200 of the Business and Professions Code recites the grounds for suspension or revocation of a license and includes, by subdivision (c), "The misrepresentation of a material fact by any applicant in obtaining a license." The record thus shows that Haley made a misrepresentation of a material fact on each of several renewal applications. Therefore sufficient basis for disciplinary action existed.

Haley further contends that the Department was estopped to take disciplinary action against him. He rests this argument on the fact that both he and his partner Mendoza testified that in 1953 an employee in the liquor division of the Board of Equalization advised them that it was not necessary to put both of their names on the license. He also argues that if there was not a strict estoppel, this evidence was introduced to show mitigating circumstances, and a finding should have been made thereon, as it would have a direct bearing on whether or not the Department had abused its discretion in revoking his license. In this connection, it should be noted that Haley overlooks the fact that the renewal applications had been filed annually by him alone for at least 10 years prior to the purported advice from the alleged employee.

However, the required elements for an estoppel are not present here. There was no evidence as to the identity of the alleged advisor or whether he was informed of the facts concerning the partnership, nor was it even satisfactorily established that he was an employee of the Department's predecessor. ▮ One of the essential elements of estoppel is that the person to be estopped must be advised of the facts. (18 Cal.Jur. 2d, § 5, p. 406.) ▮ Moreover, the principles of equitable estoppel are not ordinarily applied to deprive the public of the protection of a statute because of the mistaken action on the part of a public official or employee. (*Jacques, Inc.* v. *State Bd. of Equalization*, 155 Cal.App.2d 448, 462 [318 P.2d 6];

also *County of San Diego* v. *California Water & Tel. Co.*, 30 Cal.2d 817, 826 [186 P.2d 124, 175 A.L.R. 747].)

The main contention advanced by both Haley and the Appeals Board is that under all the facts and circumstances, revocation of the license by the Department constituted an abuse of its discretion. Haley urges that his violation was innocent, that the continued failure to include Mendoza's name on the renewal application was due to ignorance and mistake rather than to any intent to evade the law; that nothing affecting public welfare or morals ever occurred in the operation of the premises since Haley's original license in 1941, and it would be absurd to believe that his "technical violation" would be sufficient ground for holding that continuance of the license would be contrary to public welfare. The Appeals Board further argues that where, as here, the licensee has committed a violation which places his license in jeopardy, but there is no evidence that the public was injured, a penalty which denies him the opportunity to bring his business operation into compliance with the requirements of the law is so disproportionate to the offense found as to be arbitrary as a matter of law. (*Cornell* v. *Reilly*, 127 Cal.App. 2d 178, 184 [273 P.2d 572].)

But viewing the propriety of the penalty as a matter vested in the discretion of the Department under our constitutional provision (art. XX, § 22), and considering the rule that its determination of the penalty will not be disturbed unless there is a clear abuse of its discretion (*Nardoni* v. *McConnell, supra,* 48 Cal.2d 500, 507; *Bonham* v. *McConnell, supra,* 45 Cal.2d 304, 306; *Griswold* v. *Department of Alcoholic Bev. Control, supra,* 141 Cal.App.2d 807, 812), it does not appear that the Department abused its discretion here. The Department is charged with the responsibility of supervising the operation of liquor establishments and those who would exercise the privileges of liquor licenses. Undoubtedly, it has encountered serious problems in attempting to prevent the operation of such establishments by undisclosed partners or owners. Lighter penalties may have proved wholly ineffective to discourage this practice. In our recent decision in *Macfarlane* v. *Department of Alcoholic Beverage Control*, 51 Cal.2d 84 [330 P.2d 769], where a liquor license was revoked upon evidence that the licensee had violated section 337a of the Penal Code (the taking of unlawful bets on horse races at the licensed premises), we said: "Petitioner also urges that

revocation, rather than mere suspension, of license is too harsh. On the record this might appear to some of us to be a just criticism. But no such determination is within our proper function. The conduct for which the license was revoked constituted a crime under the laws of this State, and was thus at least technically contrary to public welfare or morals. The Constitution (art. XX, § 22) expressly authorizes license revocation in the discretion of the department under such circumstances, and this court is not free to substitute its own discretion as to the matter, even if it were inclined so to do." (P. 90.)

Haley argues that the Macfarlane case is distinguishable because it involved the finding of violation of an "entirely distinct and separate criminal statute, wholly independent of the laws pertaining to the licensing of dealers in liquor, and aimed at an evil of growing concern to law-abiding society." However, the concept of the broad discretion vested in the Department for fixing the penalty remains the same; and the repeated violations that Haley unquestionably committed here sustain the Department's revocation of his license. The most that can be said is that reasonable minds might differ as to the propriety of the penalty imposed, but this fact serves only to fortify the conclusion that the Department acted within the broad area of discretion conferred upon it. (Const., art XX, § 22; *Martin* v. *Alcoholic Beverage Control Appeals Board,* Sac. 7040, *supra, ante,* p. 238.) We are therefore of the opinion that the trial court correctly determined that the Appeals Board had exceeded its powers in reversing the decision of the Department.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., and McComb, J., concurred.

SCHAUER, J., Dissenting.—In my view the appeals board was correct in holding that as a matter of law, in the circumstances of this case, the department acted arbitrarily, rather than within the area of its discretion, in revoking the defendant's license.

The discretion vested in the Department of Alcoholic Beverage Control is not intended to endow it with absolute, unlimited, dictatorial power; the mere stating of this fact shows that the exercise of such power is inconsistent with the concept of "discretion." Certainly we should recognize that

the discretion given to the department is broad and inclusive. But that statement of power is true only within the limits of fixed legal principles. (*Brill* v. *Fox* (1931), 211 Cal. 739, 743 [297 P. 25]. "Such power cannot enlarge its own boundaries or support acts requiring other legal bases. Even within its legal limits the power is not unbridled. The mere fact that a court may have jurisdiction to make an order does not equip it to exercise *judicial discretion.* Its acts must not only be confined within the field of *discretion* but must also be of a character within the bounds of the limiting adjective 'judicial.' To exercise that power all the material facts in evidence must be both known and considered, together also with the legal principles essential to an informed, intelligent, and just decision. . . . The term 'judicial discretion' was defined in *Bailey* v. *Taaffe* (1866), 29 Cal. 422, 424, as follows: 'The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.' " (*Gossman* v. *Gossman* (1942), 52 Cal.App.2d 184, 194-195 [126 P.2d 178].) The Department of Alcoholic Beverage Control is bound by the same rules as a court in the exercise of the discretion vested in it.

Here the facts are that the licensee has committed a violation of the law neither on the premises nor in the manner of conducting the business, but only in the wording or content of the license renewal applications. In different circumstances the failure of an applicant to correctly list the names of all partners could indeed be material and constitute adequate ground for revocation of a license. But in the circumstances here shown the inaccuracy in wording the renewal application was substantially immaterial. The applications were made in the name of the original licensee and failed to show the name of the added partner. But the name of the partner, together with the fact of partnership, in 1953, was on advice of the sales tax division of the department's predecessor, added to the listing on the sales tax permit. There is no suggestion that the license would not have been renewed from year to year if the application had been made in the names of both partners rather than in the name of the original licensee alone. Regardless, therefore, of whether the department was bound to believe the testimony of the licensee and

his partner that in 1953 an employe of the liquor division of the department's predecessor had advised them, upon their inquiry, that it was not necessary to put both names on the license, it is apparent that the error by the applicants was an innocent mistake and was without prejudice to the department or the public.

An agent of the department testified, in substance, that he had made an investigation of the licensee; that he had been informed that the partnership "was a verbal one"; that "they did not go through any escrow company, attorney, or otherwise"; and that "Mr. Haley apparently at the time of my investigation from what I could glean from his conversations, he didn't realize he was doing anything wrong as far as this partnership between he and Mr. Mendoza was concerned. . . . I would say it was more ignorance on his part than anything else."

I agree with the argument of the appeals board that where, as here, the licensee has committed a violation which places his license (and, consequently, his business, his property, his investment, his livelihood) in jeopardy, but there is no evidence that the public was injured, a penalty which denies him the opportunity to (as stated in the majority opinion) "bring his business operation into compliance with the requirements of the law," i.e., to add the name of the "new" partner to the license application and have that application then considered on its merits, is so disproportionate to the offense found as to be arbitrary as a matter of law. (*Cf. Cornell* v. *Reilly* (1954), 127 Cal.App.2d 178, 184 [3], et seq. [273 P.2d 572].)

The above stated conclusion is emphasized by the fact that the business in question, which is to be destroyed, has in all other respects apparently been operated lawfully and without complaint since 1942, with the "new" partner having acquired his interest no later than 1943. The fact that the business had been operated for so long a period with a record completely clear of violations other than this single mistake[1] in respect to adding the name of the partner appears to me to establish that the public interest has not suffered by the violation. Concerning the duty of the department and the intent of the law in such a case the director himself (under

---

[1]The very fact that the single mistake was repeated or persisted in year after year, to no purpose whatsoever, serves to accentuate the apparent innocence of the omission rather than to give it the character of intentional deception.

date of October 7, 1957) issued a policy statement declaring:

"We must exercise our great power judiciously, reasonably . . . We should not permit its use in an arbitrary or arrogant manner. To achieve the proper use of the authority we have been given by the Constitution, we must first analyze its purpose and then determine the objectives we seek in its use. . . .

"In many cases, and I am speaking now of the assessment of suspensions, I think we have gone beyond the objectives of our obligation under the Constitution and the laws. . . . We have punished the violator of the law without regard to the threat his violation posed to the welfare and morals of the community. . . .

"The very words of the Constitution negate the idea that we are dealing with laws which, if violated, automatically require a suspension or revocation of the license. The exercise of our power is with 'discretion.' Discretion is the exercise of judgment upon a reasonable basis. Therefore, unless there is factual support that a suspension is required in the public interest, I question that there has been a reasonable exercise of our discretion where we order a suspension in the case of an isolated or technical violation by one of our licensees.

"Our purpose in the exercise of our disciplinary authority over licenses is not to punish but to protect the public. . . ."

In my view the director in the above quoted language has correctly interpreted the constitutional grant of power, and the appeals board, not the department or the superior court, has as a matter of law correctly interpreted and applied the power vested in the department and the board.

For the reasons stated I would reverse the judgment of the trial court.

PETERS, J.—I dissent.

There is no disagreement between the majority opinion of Justice Spence and the dissenting opinion of Justice Schauer on the law applicable to the fixing of penalties by the Department. The fixing of the penalty rests in the discretion of the Department. Within the limits of that discretion the determination of the Department is final and conclusive on the Appeals Board and on the courts. The majority opinion concedes and the dissenting opinion holds that there can be an abuse of discretion as a matter of law in the fixing of the penalty, and that if such occurs, the Appeals Board and the courts possess the power and the duty to reverse and to send

the case back to the Department for a reappraisal of the penalty.

The difficulty comes in determining when a particular penalty falls within and when without the proper discretion of the trier of the fact. If the penalty is so excessive that reasonable minds cannot reach any other conclusion but that the penalty is excessive, then as a matter of law, the discretion of the trier of the fact has been abused. To this principle all agree. The Appeals Board has determined, as a matter of law, that this is such a case.

In determining whether or not a penalty is excessive as a matter of law, it must be remembered that this is a proceeding to revoke a license. In such a case, the burden rests on the petitioner to prove all elements of its case, including facts to justify the penalty. We are not permitted to engage in conjecture as to why a particular penalty was imposed. We are not permitted to assume that the Department, being specialists in the field, knew of facts not appearing in the record that might support what otherwise would appear to be an excessive penalty. The Appeals Board is a specialist in the same field, and yet it found the penalty excessive as a matter of law.

We are limited to the record. If from that record we believe that the penalty was excessive as a matter of law, we should reverse. In determining this question, I suppose that the real question is whether the penalty is so excessive that it shocks the conscience. Some consciences are more easily shocked than others. The penalty herein imposed shocks my conscience. For most of the factual reasons set forth in the dissent of Justice Schauer, I believe the penalty here imposed was excessive as a matter of law. This being so, the case should be sent back to the Department for a reappraisal of the penalty.