[Civ. No. 16153.   First Dist., Div. One.   Jan. 26, 1955.]

JOSEPHINE KEANE, Appellant, v. GEORGE R. REILLY et al., Respondents.

Ellis Filene and Ralph Bancroft for Appellant.

Edmund G. Brown, Attorney General, and William M. Bennett, Deputy Attorney General, for Respondents.

PETERS, P. J.—Josephine Keane, the owner of an on-sale general liquor license and the operator of a bar and restaurant in San Francisco, was charged with having illegally served liquor on February 28, 1953, to four minors, Rudolph Espinoza, Don Lundy, Frank Mango and Dan Brosnan.   At the administrative hearing no evidence was introduced in reference to Dan Brosnan, and the charge, insofar as it refers to him, was dismissed.   The hearing officer and the board found the charges as to other three minors supported by the evidence, and ordered Keane's license suspended for 15 days.   On petition for writ of mandate to the superior court, that court, by memorandum opinion and by its findings, conclusions and judgment, held that the accused had established a defense under the law to the charges of serving liquor to Lundy and Mango, but also held that the accused was unjus-

tified in serving liquor to Espinoza. The writ of mandate was therefore denied. From the judgment of denial Keane appeals.

The facts are not in dispute. Admittedly, Espinoza, Lundy and Mango were under 21, on February 28, 1953, Espinoza being 19, and Lundy and Mango being 20. Admittedly, the bartender of appellant, Ruggeri by name, on that date, served the three boys liquor which they consumed on the licensed premises. Admittedly, on the night of the charged violations Ruggeri did not ask the three boys for any evidence of identification. Admittedly, however, the three boys, prior to February 28, 1953, had occasionally patronized the restaurant and bar operated by appellant, and, on different occasions prior to that date, had submitted to the bartender identification evidence that indicated that they were in fact 21, and, as a result, were served drinks. Ruggeri testified that he believed these credentials. He said that Lundy, he believed, had displayed a driver's license, and that Mango had exhibited either a driver's license or a selective service card. He testified that Espinoza had displayed some sort of an identification card, probably a driver's license or a selective service card. Admittedly, all such cards indicated that the boys were 21.

Don Lundy testified that prior to February 28, 1953, he had found a wallet containing a driver's license, and that the license indicated that the licensee was 21; that the physical description on such license fitted him fairly accurately; that he showed this card to Ruggeri on two or three occasions prior to February 28, 1953, and was served drinks. Thereafter, he was not required to submit any identification.

Mango testified that he had possession of a friend's driver's license which, upon request, he had submitted to Ruggeri a couple of months prior to February 28, 1953; that this license showed the licensee was 21; that he had obtained this license to fool bartenders; that the physical description roughly fitted him.

Espinoza testified that in August or September, 1952, upon Ruggeri's request, he had submitted to him an identification card. This card he himself had prepared from a blank identification card of the type that is usually found in billfolds; that the card as prepared by him had his picture, his fingerprints, his name, address and telephone number, his height and weight, the name of his employer, and his age, which he misrepresented to be 21. He had secured the fingerprints from his employer's place of business. He had inserted this

simulated card in a cellophane jacket. He also testified that in making up this identification card he had tried to make it look bona fide and official in order to fool bartenders and to induce them to serve him drinks. This simulated identification card was not produced at the hearing or trial.

As already pointed out, the board found as to all three minors that the identifications submitted by them to Ruggeri were not sufficient to constitute a defense to the charge. As to Espinoza, the board found, by adopting the hearing officer's proposed decision, that he had exhibited to Ruggeri the card above described; that such card had been prepared by Espinoza, and that it "was not such bona fide documentary evidence of majority and identity . . . as is required to constitute a defense to this proceeding." The superior court reversed the board as to Lundy and Mango, finding that the identifications submitted by them did constitute a defense to the charges, but as to Espinoza the court found that the findings and conclusions of the board were supported.

The correctness of the trial court's determination depends upon the proper interpretation of certain provisions of the Alcoholic Beverage Control Act. (At the time of the hearing such act appeared in 2 Deering's Gen. Laws, Act No. 3796; now with some of the sections slightly modified the act has been codified and found in Bus. & Prof. Code, § 23000 et seq.) Section 40 of the act (now Bus. & Prof. Code, § 24200) provides that, subject to certain exceptions not here pertinent, it is a ground for suspension or revocation of a license for a licensee to violate any provision of the act.

Section 61a (now Bus. & Prof. Code, § 25658, subd. (a)) provides: "Every person who sells, furnishes, gives, or causes to be sold, furnished or given away any alcoholic beverage to any person under the age of twenty-one years shall be guilty of a misdemeanor."

Section 61.2(a) and (b) of the act (see Bus. & Prof. Code, §§ 25659, 25660) provides:

"(a) For the purpose of preventing the violation of Section 61 of this act, any licensee, or his agent or employee may refuse to sell or serve alcoholic beverages to any person who is unable to produce adequate written evidence that he or she is over the age of 21 years.

"(b) In any criminal prosecution, or proceeding for the suspension or revocation of any license issued under this act and based upon violation of said Section 61, proof that the

defendant licensee or his agent or employee demanded and was shown, before furnishing any alcoholic beverage to a minor, a motor vehicle operator's license or a registration certificate issued under the Federal Selective Service Act or other bona fide documentary evidence of majority and identity of such person, shall be a defense to such prosecution or proceeding for the suspension or revocation of any license.''

Under this last-quoted section a licensee does not establish an absolute defense by evidence that the minor produced an identification card purporting to show that the person in possession of the card is 21. The defense, must be asserted in good faith, that is, the licensee or the agent of the licensee must act as a reasonable and prudent man would have acted under the circumstances. Obviously, the appearance of the one producing the card, or the description on the card, or its nature, may well indicate that the person in possession of it is not the person described on such card. In such a case the defense permitted by section 61.2(b) could not successfully be urged. In the case of *Young* v. *State Board of Equalization,* 90 Cal.App.2d 256 [202 P.2d 587], this limitation was discussed. In that case the bartender sold liquor to 17-year-old Joe Taylor after Taylor had produced a draft registration car issued to one Glenn Tucker. The bartender looked the card over and asked Taylor to write his name on a piece of paper. Taylor wrote the name of Tucker and the bartender compared this signature with the one on the identification card, and was satisfied with the comparison. Taylor had found the card and had changed certain figures on it to make it appear that the person described was 21. The board found that the bartender had violated section 61(a) of the act and had not established a defense under section 61.2(b). The superior court reversed the board. This was affirmed by the appellate court. In so holding, the appellate court pointed out that the presentation to the bartender of the draft registration card was prima facie evidence, under the section, of the majority and identity of the person presenting it. In so holding, the court stated (p. 258) : ''The clerk, if he acted in good faith and without actual knowledge, gained from the appearance of the purchaser, or otherwise, that the card did not or could not belong to the minor, and if the alteration was with reasonable diligence not discernible or ascertainable, had a right to assume that anyone presenting such a card would not unlawfully possess or use it.''

This rule was expanded in *Conti* v. *State Board of Equalization,* 113 Cal.App.2d 465 [248 P.2d 31], where a 19-year-old serviceman presented for identification an out-of-state driver's license, not his own, which, on its face, showed that it was issued to a person over 21. There, too, the board had suspended the license, but the superior court reversed. This was affirmed by the appellate court. In so holding, the appellate court stated (p. 466):

". . . the statute does not impose upon the licensee the duty of determining at his peril whether the driver's license is a bona fide license of the party presenting it. Possession of the license is presumptive evidence that the license belonged to the holder. . . . To hold otherwise would require the attendant to determine at his peril whether the driver's license had been legally issued, whether it had not been revoked or suspended, and whether the party presenting it was in truth and fact the legitimate holder of the paper. . . .

". . . Unless the personal appearance of the holder of the driver's license demonstrates above mere suspicion that he is not the legal owner of the license the bartender is justified in assuming the validity of the driver's license and in accepting the holder as the legal owner." The court emphasized that the board had made no finding relating to the presentation and inspection of the license.

How do these statutes and these cases apply to the instant case? In both the cited cases the board had failed to find on the good faith of the bartender, merely finding that his evidence did not establish a defense under section 61.2(b) of the act. In the instant case the hearing officer and the board found the facts as already recounted and then found that "the identification card exhibited by said minor was not such bona fide documentary evidence of majority and identity of the said Rudolph Espinoza as is required to constitute a defense to this proceeding for the suspension or revocation of any license . . . under the provisions of Sec. 61.2(b) of said Act." The trial court found that this finding was supported. It will be noted that there is no finding that the bartender acted in bad faith, or failed to act as a reasonably prudent man would have acted under similar circumstances. In the absence of such a finding we think the rationale of the Conti case requires a reversal. That case expressly withdraws from the licensee or his agent the burden of determining at his peril the legality of the document presented as identification or the legitimacy of the holder's right to

possess the document. That case involved an out-of-state driver's license. The present case involves a document prepared by the holder to look like a bona fide official identification card with the holder's picture and fingerprints on it. All of the evidence is to the effect that it was intentionally prepared to look and did look official, and that the bartender believed it to be official. The prosecution did not present the card into evidence, but relied upon its description as given by the witnesses. There is no evidence or finding as to whether Espinoza looked 21 or younger, and no evidence to rebut the testimony of Ruggeri or Espinoza that the card looked like an official identification card, or that Ruggeri believed the card to be an official identification card. The law does not require the bartender to inspect the identification submitted to him at his peril. If he acts in good faith and with diligence he is protected, and that is so whether the document is validly issued by some agency or is made to look like an officially issued document. ■ Where the evidence shows that a document apparently complying with section 61.2(b) has been submitted to him, and he has testified that he believed it was an official identification, the board and the courts are without power to suspend the license in the absence of a supported finding that the bartender acted in bad faith and without due diligence.

The trial judge, in his memorandum opinion, commented on the fact that the bartender had not required Espinoza to write his signature so as to compare it with that on the card produced by him. Just what that would have shown does not appear. Espinoza had signed the simulated identification card and it was his signature on it. Moreover, his picture appeared thereon, which was a better test of identity than would have been a signature.

The trial judge also misinterpreted the evidence. He stated, in his opinion, that the evidence "that the bar was dimly lighted certainly was sufficient to justify a finding . . . that bona fide documentary evidence of majority was not submitted to the bartender, and further that the bartender was guilty of neglect in scrutinizing the documentary evidence in a dim light. . . .

". . . Here a careful inspection under proper lighting facilities would have disclosed a self-manufactured I.D. card presented by Espinoza." Thus, the trial judge apparently believed that the record showed that Ruggeri had examined the identification card under poor lighting, and that this ex-

plained why he had not discovered its falsity. If this statement by the trial judge were supported by evidence it would have supported a finding, had one been made, of bad faith and lack of diligence on the part of Ruggeri. But there is not one word in the record as to the lighting conditions under which the identifications were checked. The only mention of lighting conditions in the record is the evidence of Ruggeri that on February 28, 1953, the night the offense was committed, he had dimmed the lights in the restaurant-bar about 8:30 p. m. because the restaurant usually stopped serving food at that time. But the identifications were not made on February 28, 1953, but some months prior thereto. The record indicates that the three boys, when served drinks, had them with their meals, which would indicate that they purchased drinks before 8:30 p. m. and while the establishment was still serving food. There is not one word in the record as to the time of the day or night the identifications were made, or what the lighting conditions were in the bar on those occasions. As already pointed out, if the evidence were as summarized by the trial judge it might well be that such evidence would have supported a finding, had one been made, that the bartender acted without due diligence. Bu there was no such evidence, and there is no other evidence of bad faith.

It should also be pointed out that there appears to be a grave inconsistency in the judgment insofar as it exonerates the appellant from the charges involving Lundy and Mango, but finds the licensee guilty of the offense involving Espinoza. Lundy and Mango submitted drivers' licenses of persons other than themselves, describing persons other than themselves. No attempt was made to check the signatures on such licenses. But, according to the record, Espinoza presented what appeared to be, and what had been intentionally prepared to look like, an official identification card. It contained a picture of the very person presenting it, his thumbprints, and his physical description. There was far more reason to be convinced of Espinoza's identification than there was by the licenses presented by Lundy and Mango. Yet the court exonerated appellant as to the Lundy and Mango charges and found appellant guilty of the Espinoza charge.

For the reasons stated, the judgment appealed from is reversed.

Bray, J., and Wood (Fred B.), J., concurred.