[No. A104012. First Dist., Div. One. May 27, 2004.]

DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, Petitioner, v. ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD, Respondent; AIYAZ MASANI et al., Real Parties in Interest.

1430

## Counsel

Bill Lockyer, Attorney General, and Michael F. Sweeney, Deputy Attorney General, for Petitioner.

No appearance for Respondent.

Harold G. Spaulding for Real Parties in Interest.

## Opinion

**MARCHIANO, P. J.**—Petitioner Department of Alcoholic Beverage Control (Department) suspended the liquor license of real parties in interest Aiyaz Masani and Shamin Vasani, doing business in Napa as Emil's Liquor (licensees), for selling alcohol to a minor who used a fake identification card (ID). The Department rejected the licensees' assertion of a defense under Business and Professions Code section 25660, which requires the licensee to reasonably rely on an identification issued by a government agency. The Department implicitly found the statute applied to fake ID's which purport to be government issued, but found the licensees did not reasonably rely on the fake ID.

The licensees appealed to respondent Alcoholic Beverage Control Appeals Board (Board), which reversed the Department's suspension order. The Department petitioned this court for a writ of review. We issued the writ and heard oral argument.

We hold that (1) Business and Professions Code section 25660 applies to fake ID's which purport to be issued by a government agency, but that (2) the

licensees in this case failed to exercise reasonable diligence and did not reasonably rely on the fake ID. Accordingly, we vacate the decision of the Board and affirm the Department's order suspending the liquor license.

## I.  FACTS

We take the facts from the testimony before the Department's administrative law judge (ALJ) and from the factual findings set forth in the ALJ's proposed decision of September 13, 2002, which was subsequently adopted by the Department.

On the evening of March 22, 2002, Matthew Johnson entered Emil's Liquors to buy beer. He was only 19. He took two 6-packs of Rolling Rock up to the counter. The store clerk, Jessica Salazar, asked him for identification.

Johnson showed Salazar a fake ID card, "a laminated card that was intended to appear to be a California Identification Card issued by the Department of Motor Vehicles." The fake ID card advanced Johnson's birth year by three years, making him appear to be 22 instead of 19. Johnson had purchased the fake ID in San Francisco for $55. One of the reasons he bought it was to use it to buy alcohol. The fake ID was not issued by a government agency.

The fake ID was in Johnson's wallet when he showed it to Salazar. The card was inserted behind a plastic window. Salazar looked at the ID, but neither removed it from the wallet nor asked Johnson to do so. Salazar then sold Johnson the beer.

Salazar did not testify at the administrative hearing. Johnson did. During his cross-examination of Johnson, the licensees' counsel had Johnson place the fake ID in his wallet in exactly the same way it was on the night he bought the beer at Emil's. The ALJ examined the fake ID as it appeared in the wallet. However, the ALJ did not make a record of his observations at that time. But in his proposed decision the ALJ made factual finding 3(e): "Salazar's acceptance of the false identification was not at all justified under the circumstances it was presented to her: it remained in Johnson's wallet in a position where the top portion of the card could not be seen. Salazar could not see the lettering 'California' that appears at the top of the card, or the next line that contains the words 'Identification Card.' She also could not see the upper corners of the card that appear to bear the initials 'DMV.' "[1]

---

[1] "DMV" is, of course, the well-known abbreviation for Department of Motor Vehicles.

Based on the testimony of a Department investigator who observed the beer sale and immediately interviewed Johnson at the scene, the ALJ made factual findings 3(a)–3(d) regarding the aspects of the card that indicate it was a forgery: "[3](a) The lettering on the false identification card is typewritten on the card, whereas an identification card issued by the Department of Motor Vehicles contains computer generated lettering. [¶] [3](b) The matting that forms the background of Johnson's picture is white or off-white. Cards issued by the Department of Motor Vehicles do not contain a white or off-white background. [¶] [3](c) Johnson's picture appearing on the card is not an appropriate fit on the matting. The picture is somewhat raised, indicating it was taken separately and attached to the card. [¶] [3](d) The back of the card does not contain a magnetic strip, as do cards issued by the Department of Motor Vehicles."[2]

Based on these factual findings, the ALJ concluded that the licensees did not have a defense under Business and Professions Code section 25660.[3] That statute provides: "Bona fide evidence of majority and identity of the person is a document issued by a federal, state, county, or municipal government, or subdivision or agency thereof, including, but not limited to, a motor vehicle operator's license or an identification card issued to a member of the Armed Forces, which contains the name, date of birth, description, and picture of the person. Proof that the defendant-licensee, or his employee or agent, demanded, was shown and acted in reliance upon such bona fide evidence in any transaction, employment, use or permission forbidden by [Section 25658, selling alcohol to minors] shall be a defense to any criminal prosecution therefor or to any proceedings for the suspension or revocation of any license based thereon."

The ALJ found that the fake ID was not bona fide evidence of majority and identity because of the four obvious indicia of forgery (factual findings 3(a)–3(d)) and the unjustified manner in which Salazar viewed the ID—i.e., while it remained in Johnson's wallet (factual finding 3(e)). The ALJ further found the defense unavailable in factual finding 4: "Salazar was not acting in good faith reliance upon a document *purportedly issued by a government agency; that portion of the document she viewed did not purport to be issued by any government agency*." (Italics added.)

Thus, the ALJ accepted the proposition that a fake ID which "purported" to be issued by a government agency *could* provide a defense under section 25660. The ALJ simply concluded, on the evidence presented to him, that Salazar did not reasonably rely on Johnson's fake ID.

---

[2] The fake ID card used by Johnson was an exhibit below and is in the record before us.

[3] Subsequent statutory citations are to the Business and Professions Code unless otherwise indicated.

The ALJ recommended that Emil's liquor license be suspended for 25 days. On October 10, 2002, the Department adopted the ALJ's proposed decision.

The licensees appealed to the Board. They contended that factual findings 3(e) and 4 were not supported by substantial evidence. With regard to factual finding 3(e), the licensees argued there was "no evidence in the record that the mere viewing of the card [while it was in the wallet] revealed any overt defects in the card that would or should have alerted Salazar that the card was invalid because it was a fake or forged card."

With regard to factual finding 4, the licensees argued "Johnson presented what appeared to be a government issued California Identification Card to Salazar . . ." and that the clerk "exercise[d] . . . good faith in reasonable reliance [on] a document that appeared to comport with the requirements of section 25660." The licensees relied on a passage from *Kirby v. Alcoholic Bev. etc. App. Bd.* (1968) 267 Cal.App.2d 895 [73 Cal.Rptr. 352] (*Kirby*): "[R]eliance in good faith upon a document issued by one of the governmental entities enumerated in section 25660 constitutes a defense to a license suspension proceeding even though the document is *altered, forged or otherwise spurious*. [Citation.]" (*Kirby, supra,* at p. 897, italics added.)

In response, the Department argued that the factual findings were supported by substantial evidence—in large part because the ALJ viewed the fake ID as it had been positioned in Johnson's wallet. The Department also argued the licensees did not have a valid section 25660 defense, for two reasons: (1) the statute did not apply because Johnson's fake ID was not actually issued by a government agency; and (2) in any case Salazar did not reasonably rely on the fake ID. With regard to (1), the Department took the position—also relying on *Kirby*—that section 25660 requires that the ID be issued by a government agency and a fake ID simply does not qualify under the statute to afford a defense to a liquor licensee.

The Board reversed the Department's decision and suspension order. The Board agreed with the licensees that factual finding 3(e) was not supported by substantial evidence. The Board found that there was no detailed testimony "regarding the position of the identification card in the wallet . . . ." And noting that Salazar did not testify, the Board found "there is no testimony about what she actually saw." The Board opined it was "possible" that when the ALJ examined the card in the wallet "the wording at the top was covered up." But the Board found "there is nothing in the record to indicate what the ALJ saw."

The Board then found that factual finding 4 "must also fail" because it relied on factual finding 3(e).

The Board found that the fake ID "appeared to be a governmentally issued California Identification Card." Johnson's ID "looks very much like an authentic California Identification [C]ard, more so than most others this Board has seen."

In a footnote to this sentence the Board described the fake ID as follows: "The card is the same size and shape, it bears the same lettering in the same colors, the same DMV logo at the top, the same notation that the card is issued only for identification purposes, an image of the state seal, and even iridescent images overlaying the picture and text that mimic the holographs on a genuine card."

The Board rejected the Department's argument that section 25660 could only apply if the ID was in fact issued by a government agency—and the statute could not apply to a fake ID. Citing the passage of *Kirby* referring to "altered, forged or otherwise spurious" ID's, the Board concluded that *Kirby* "reaffirms that false identification may suffice for a defense under section 25660."

According to the Board, documents delineated by section 25660 "would seem to include spurious or forged documents that purport to be governmentally issued." "The false identification card in the present case is a forged or spurious document purporting to be governmentally issued. Absent some more specific direction from a court, this Board is not willing to reject, categorically, spurious documents that purport to be governmentally issued."

Having determined that section 25660 applied to fake ID's, the Board turned to the crux of its decision—the question of reasonable reliance. The Board concluded that Salazar accepted the ID in good faith, believing it to be "genuine," and that there was nothing in the record to show that her reliance on the fake ID was unreasonable.

"It is true that the identification card used in this case is not a perfect copy of a genuine California [I]dentification [C]ard. On the other hand, the distinguishing factors on the face of the card are subtle, especially in light of how closely the rest of the card resembles a genuine one. It is not surprising to this Board that [Salazar] did not question the authenticity of the card when she looked at it."

Since the Board found that Salazar reasonably relied under a fake ID which fell within section 25660, the Board reversed the Department.

## II. DISCUSSION

The Department contends the Board erred because (1) section 25660 does not apply to fake ID's and (2) there was no reasonable reliance. We disagree

with the Department as to (1), but we agree as to (2). We conclude that section 25660 does apply to fake ID's which purport to be government issued. But the Department ALJ found, as a question of fact, there was no reasonable reliance on the particular ID in this case. In reaching the contrary conclusion the Board impermissibly reweighed the evidence and substituted its independent judgment for the Department's. We will therefore vacate the decision of the Board and affirm the Department.

Our review "is limited to a determination of whether the Department has proceeded without or in excess of its jurisdiction; whether the Department has proceeded in the manner required by law; whether the Department's decision is supported by its findings; whether those findings are supported by substantial evidence; or whether there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or was improperly excluded at the hearing before the Department. (§ 23090.2.)" (*CMPB Friends, Inc. v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1250, 1254 [122 Cal.Rptr.2d 914] (*CMPB Friends*).)

■ Certain principles guide our review. We review the Department's decision, not the Board's. (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1072 [123 Cal.Rptr.2d 278].) We cannot interpose our independent judgment on the evidence, and we must accept as conclusive the Department's findings of fact. (*CMPB Friends, supra,* 100 Cal.App.4th at p. 1254; *Laube v. Stroh* (1992) 2 Cal.App.4th 364, 367 [3 Cal.Rptr.2d 779]; §§ 23090.2, 23090.3.) We must indulge in all legitimate inferences in support of the Department's determination. Neither the Board nor this court may reweigh the evidence or exercise independent judgment to overturn the Department's factual findings to reach a contrary, although perhaps equally reasonable, result. (See *Lacabanne Properties, Inc. v. Dept. Alcoholic Bev. Control* (1968) 261 Cal.App.2d 181, 185 [67 Cal.Rptr. 734] (*Lacabanne*).) ■ The function of an appellate board or Court of Appeal is not to supplant the trial court as the forum for consideration of the facts and assessing the credibility of witnesses or to substitute its discretion for that of the trial court. An appellate body reviews for error guided by applicable standards of review.

*Interpretation of Section 25660*

■ Section 25660 provides a defense to the charge of selling alcohol to minors if the licensee demanded and relied upon bona fide documentary evidence of majority and identity issued by a government agency, including certain common types of identification including driver's licenses.[4]

The Department contends that the plain language of section 25660 is clear and unambiguous, and excludes fake ID's from the scope of the defense. The guiding rules of statutory interpretation are well known.

"The fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.]" (*O'Kane v. Irvine* (1996) 47 Cal.App.4th 207, 211 [54 Cal.Rptr.2d 549] (*O'Kane*).) "To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning. [Citations.]" (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) Where the statutory wording is clear a court "should not add to or alter [it] to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*O'Kane, supra,* 47 Cal.App.4th at p. 211.) Furthermore, statutory language must be viewed in context, ". . . 'keeping in mind the nature and obvious purpose of the statute where they appear.' " (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224], quoting *Johnstone v. Richardson* (1951) 103 Cal.App.2d 41, 46 [229 P.2d 9].) We must also construe a statute to avoid illogical or absurd results. (*Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 142 [65 Cal.Rptr.2d 580, 939 P.2d 1280].)

The Department argues section 25660, by its terms, does not apply to a fake ID but only to an ID actually issued by a government agency. The Department claims the Board erred by including within the scope of the statute ID's that only "purport" to be governmentally issued. Thus the Department would deprive a licensee of a defense under the statute, even if one reasonably relies on a fake governmentally issued ID which is the most consummate of forgeries. We conclude the Department's position is not sustainable, and its interpretation of section 25660 would lead to illogical, unjust results.

---

[4] For purposes of our discussion of liquor laws, "minor" means someone underage for purposes of buying, possessing, or drinking alcohol—i.e., someone under 21. (See *Reilly v. Stroh* (1984) 161 Cal.App.3d 47, 53 [207 Cal.Rptr. 250].) Also, we use the term "licensee" to include the licensee's agent employee, such as a bartender or a liquor store clerk.

But first we must point out that the Department has not taken a consistent position on this issue in the context of this litigation. Contrary to the Department's claim in its writ petition in this court, the Department did *not* find, at the conclusion of the administrative hearing, "that a fake identification that was not issued by a government entity was not bona fide evidence of majority under section 25660."

This claim misreads the record. The ALJ found that Salazar did not rely upon a document *purportedly* issued by a government agency, because she viewed only a portion of the ID which did not *purport* to be issued by a government agency: because she did not see the portion containing "State of California," "Identification Card," or "DMV," Salazar did not rely on a purportedly governmental ID.

The Department adopted the ALJ's finding. Only later, in response to the licensee's appeal, the Department—through its staff counsel—took the categorical position that a fake ID cannot fall under the statute. The Board rejected this approach, adopting the very standard of "purporting" used by the ALJ.

Inconsistencies aside, the Department's position is without merit. We reach this conclusion after a review of the decisional law arising from section 25660 and its statutory predecessor, section 61.2, subdivision (b), of the 1935 Alcoholic Beverage Control Act. The predecessor, which we shall simply call section 61.2(b), provided as follows: "In any criminal prosecution, or any proceeding for the suspension or revocation of any license issued under this act and based upon violation of Section 61 [selling alcohol to minors], proof that the defendant licensee or his agent or employee demanded and was shown, before furnishing any alcoholic beverage to a minor, a motor vehicle operator's license or a registration certificate issued under the Federal Selective Service Act or other bona fide documentary evidence of majority and identity of such person, shall be a defense to such prosecution or proceeding for the suspension or revocation of any license." (Quoted in *Young v. State Bd. of Equalization* (1949) 90 Cal.App.2d 256, 257–258 [202 P.2d 587] (*Young*).)

In *Young*, the minor purchased a half-pint of whiskey from a cafe, using a draft registration card actually issued by the Selective Service—but the card belonged to a friend and the last digit of the birth date had been altered to indicate the bearer was four years older, and thus over 21. (*Young, supra,* 90 Cal.App.2d at p. 257.) When presented with the altered registration card, the licensee's clerk examined both sides of it and had the minor sign his signature, so the clerk could compare that signature with the one on the card.

The Board of Equalization suspended the liquor license, ruling the registration card was not " '. . . "bona fide documentary evidence of majority and identity" ' " because it had been issued to another and it had been altered. (*Young, supra,* 90 Cal.App.2d at p. 258.)

The *Young* court disagreed, and ruled the licensee had established the defense provided by section 61.2(b). "The wording of the section indicates that . . . a registration certificate is bona fide documentary evidence of majority and identity. The clerk, if he acted in good faith and without actual knowledge, gained from the appearance of the purchaser, or otherwise, that the card did not or could not belong to the minor, and if the alteration was with reasonable diligence not discernible or ascertainable, had a right to assume that anyone presenting such a card would not unlawfully possess or use it." (*Young, supra,* 90 Cal.App.2d at p. 258.) The court also noted that the minor did not appear underage, was not known to the clerk, and provided a signature which was a " 'fair resemblance' " to that on the card. (*Ibid.*)

A few years later, *Conti v. State Board of Equalization* (1952) 113 Cal.App.2d 465 [248 P.2d 31] (*Conti*) followed *Young.* (*Conti, supra,* at p. 467.) In *Conti* a 19 year old bought a beer in a bar using an out-of-state driver's license issued to a friend who was over 21. Apparently the license was not a photo ID. The *Conti* court seemed to conclude from the record before it that there was no reason for the bartender to conclude that the minor was underage or that the driver's license was not his. (*Id.* at pp. 466–467.)

"[Section 61.2(b)]·does not impose upon the licensee the duty of determining at his peril whether the driver's license is a bona fide license of the party presenting it. . . . To hold otherwise would require the [licensee] to determine at his peril whether the driver's license had been legally issued, whether it had not been revoked or suspended, and whether the party presenting it was in truth and fact the legitimate holder of the paper." (*Conti, supra,* 113 Cal.App.2d at p. 466.) But the court cautioned that a licensee still had to exercise due diligence: "Unless the personal appearance of the holder of the driver's license demonstrates above mere suspicion that he is not legal owner of the license [i.e., he appeared underage] the bartender is justified in assuming the validity of the driver's license and in accepting the holder as the legal owner." (*Id.* at pp. 466–467.)

In 1953, the Legislature reenacted section 61.2(b) as section 25660. (Stats. 1953, ch. 152, § 1, p. 1025; see *Keane v. Reilly* (1955) 130 Cal.App.2d 407, 409–410 [279 P.2d 152] (*Keane*).)

In *Keane* the court applied *Young* and *Conti* to a homemade, but official looking, ID. Three minors walked into a bar. Two, Lundy and Mango, had

driver's licenses, again apparently without photos, which had been issued to others but which bore a physical description similar to the minor. The third, Espinoza, had an ID he prepared from a blank ID card typically found in a newly purchased wallet. The homemade ID had Espinoza's picture; fingerprints; name, address, and telephone number; height and weight; and the name of Espinoza's employer. The ID also falsely listed Espinoza's age as 21 (he was only 19). (*Keane, supra,* 130 Cal.App.2d at pp. 408–409.) Espinoza admitted that "in making up [the] identification card he had tried to make it look bona fide and official in order to fool bartenders and to induce them to serve him drinks." (*Id.* at p. 409.) All three minors purchased alcoholic beverages with their bogus ID's. (*Id.* at p. 408.)

The issue in *Keane* was whether the licensee had established a defense under section 25660 to rely on Espinoza's homemade ID.[5] Relying on *Young* and *Conti,* the *Keane* court held that the licensee had a defense based on its good faith reliance on an apparently valid ID. "The present case involves a document prepared by the holder to look like a bona fide official identification card with the holder's picture and fingerprints on it. All of the evidence is to the effect that it was intentionally prepared to look and did look official, and that the bartender believed it to be official. . . . The law does not require the bartender to inspect the identification submitted to him at his peril. *If he acts in good faith and with diligence he is protected, and that is so whether the document is validly issued by some agency or is made to look like an officially issued document.*" (*Keane, supra,* 130 Cal.App.2d at p. 412, italics added.)

But the court emphasized the licensee must act in good faith in accepting an apparently valid but actually fake ID: "The defense must be asserted in good faith, that is, the licensee or the agent of the licensee must act as a reasonable and prudent man would have acted under the circumstances. Obviously, the appearance of one producing the card, or the description on the card, *or its nature,* may well indicate that the person in possession of it is not the person described on such card." (*Keane, supra,* 130 Cal.App.2d at p. 410, italics added.) But where "a document apparently complying with section [25660] has been submitted to him, and . . . he believed it was an official identification, the board and the courts are without power to suspend the license in the absence of a supported finding that the bartender acted in bad faith and without due diligence." (*Id.* at p. 412, italics added.)

Shortly after the *Keane* decision the Legislature amended section 25660 to read as follows: "In any criminal prosecution or proceeding for the

---

[5] The Board had found that the licensee had no defense as to all three minors. On review, the trial court found the licensee had a defense as to Lundy and Mango, but not as to Espinoza. The licensee appealed from that adverse finding. The trial court's determination regarding Lundy and Mango were not directly at issue in *Keane.*

suspension or revocation of any license based upon violation of Section 25658 [selling alcohol to minors], proof that the defendant licensee, or his agent or employee, demanded and was shown, immediately prior to furnishing any alcoholic beverage to a person under 21 years of age, *bona fide documentary evidence of majority and identity of the person issued by a federal, state, county, or municipal government, or subdivision or agency thereof, including, but not limited to*, a motor vehicle operator's license, a registration certificate issued under the Federal Selective Service Act, or an identification card issued to a member of the armed forces, is a defense to the prosecution or proceeding for the suspension or revocation of any license." (Stats. 1955, ch. 627, § 1, pp. 1127–1128, italics added.)

The 1955 amendment imposed a requirement that the bona fide documentary evidence of majority and identity be issued by a government agency. The current version of the statute, quoted in the statement of facts, is not materially different from the 1955 version for purposes of the issue before us. The question we must decide is whether the statutory defense is limited to ID's actually issued by the government or may include documents which *purport to be* issued by the government but are fake—albeit credible forgeries.

*Dethlefsen v. State Bd. of Equalization* (1956) 145 Cal.App.2d 561 [303 P.2d 7] (*Dethlefsen*) was decided after the amendment but was based on facts governed by the preamendment version of section 25660. (*Dethlefsen, supra,* at p. 562.) In *Dethlefsen* a minor purchased a half-pint of vodka in a liquor store, using his own draft registration card, which he had altered to backdate his year of birth to make him appear to be over 21. At issue was whether it was reasonable for the liquor store clerk to rely on the validly issued, but altered, document. Following *Young, Conti*, and *Keane*, the *Dethlefsen* court concluded that the clerk did not act in bad faith and there was no showing that the alteration was obvious or that the clerk did not exercise due diligence in relying on the ID. (*Id.* at pp. 562–567.)

The *Dethlefsen* court also expounded on the purpose of section 25660 as interpreted by the *Young, Conti,* and *Keane* decisions. "The purpose of [the statute] when enacted was to relieve vendors of alcoholic beverages from having in all events to determine at their peril the age of the purchaser. It was intended to furnish a readily applicable standard usable under the conditions generally obtaining which, when complied with, would constitute a defense if in fact the purchaser was under 21." (*Dethlefsen, supra,* 145 Cal.App.2d at p. 567.)

This standard involved the presentation of bona fide evidence of majority and identity. And if there was any doubt as to the majority of the alcohol

purchaser, and that doubt "[arose] in good . faith, [the statute] intended that the vendor could rely upon documentary evidence of majority and identity such as motor vehicle operators' licenses and draft board certificates, *but the bona fides of such documents must be ascertained if the lack of it would be disclosed by reasonable inspection, the circumstances considered.*" (*Dethlefsen, supra,* 145 Cal.App.2d at p. 567, italics added.)

Thus, the decisional law prior to the 1955 amendment evolved into a rule that allowed the licensee to rely, in good faith, on a fake or altered ID if the forgery or alteration was not apparent from a duly diligent examination of the document and its bearer. As we shall see, this decisional law—particularly *Young* and *Dethlefsen*—continued to influence interpretations of the amended statute.

The first case to arise under the 1955 amendment was *5501 Hollywood, Inc. v. Dept. Alc. Control* (1957) 155 Cal.App.2d 748 [318 P.2d 820] (*Hollywood*). In that case a minor purchased a whiskey and coke in a bar, using a driver's license she had found that was issued to another person. At issue was whether a reasonable, prudent licensee would have observed that the physical description on the license did not match that of the minor. (*Hollywood, supra,* at pp. 750–751, 753–754.)

The *Hollywood* court noted that the language of the 1955 amendment "carries a different significance. The statute now demands documentary evidence of majority and identity which is intrinsically bona fide and the mere fact of production of a vehicle operator's license does not make a case." (*Hollywood, supra,* 155 Cal.App.2d at p. 753.) But the court went on to quote and rely on the principles set forth in *Keane* and *Dethlefsen*. The court explicitly recognized that the licensee must examine the ID and its holder as would a reasonable prudent person, but does not act at his peril if a reasonable inspection of the ID does not indicate the minor is underage or is using someone else's ID. (*Id.* at pp. 753–754.) The *Hollywood* court quoted the passage of *Dethlefsen*, quoted *ante*, providing that a licensee is entitled to rely on documentary evidence of majority issued by a government agency— such as a driver's license—where the invalidity of the license is not apparent from a reasonable inspection of the document. (*Ibid.*)

*Farah v. Alcoholic Bev. etc. Appeals Bd.* (1958) 159 Cal.App.2d 335 [324 P.2d 98] (*Farah*) discussed prerequisites of the section 25660 defense, and relied almost entirely on *Dethlefsen, Young*, and *Hollywood*: "First, the licensee who makes a diligent inspection of the documentary evidence of majority and identity offered by the customer at or about the time of the sale is entitled to rely upon its apparent genuineness. [Citations to *Dethlefsen* and *Young*.] [¶] Second, a licensee must exercise the caution which would be

shown by a reasonable and prudent person in the same or similar circumstances. [Citation to *Hollywood*.]" (*Farah, supra,* 159 Cal.App.2d at p. 339.)

The *Lacabanne* court, writing in 1968, followed the *Farah* language. (*Lacabanne, supra,* 261 Cal.App.2d at pp. 189–190.) *Lacabanne* involved an altered ID that actually was issued to the minor—and not a fake ID manufactured of whole cloth. (*Id.* at pp. 186, 191, 191, fn. 5.) But the court did conclude that the "imperceptibly altered" ID was relied on in good faith and satisfied the section 25660 defense as bona fide evidence of majority and identity. (*Lacabanne, supra,* at pp. 186–187, 190–191, 193 & fn. 5.)

The *Kirby* decision, relied on by the Department, the licensees, and the Board, is the most helpful. *Kirby* suggests that a licensee may, in good faith, rely on a fake ID which appears to have been issued by a government agency. Citing *Dethlefsen*, the *Kirby* court observed: "It is well established that reliance in good faith upon a document issued by one of the governmental entities enumerated in section 25660 constitutes a defense to a license suspension proceeding even though the document is *altered, forged, or otherwise spurious*. [Citation.]" (*Kirby, supra,* 267 Cal.App.2d at p. 897, italics added.)[6]

■ Granted, *Kirby* did not involve a fake government-issued ID, but a forged birth certificate and a fake "homemade" ID, similar to the one used by the minor in *Keane*. Because these fake documents did not fall within section 25660's requirement of government issuance, *Kirby* held the license suspension was proper. (*Kirby, supra,* 267 Cal.App.2d at pp. 896–899.) However, by implication the reasoning of *Kirby* is consistent with a conclusion that good faith reliance on a fake government-issued ID—that is to say, a credible forgery that withstands a reasonable inspection—is a defense under section 25660. CALJIC No. 16.012 (7th ed. 2003) has adopted *Kirby*'s rationale and provides that bona fide evidence of age and identity can be a document "purporting to be issued" by a federal, state, or local government.

■ The clear purpose of section 25660 was to require a licensee to examine and rely on an ID issued by a government agency—as opposed to a homemade ID like the one in *Keane* or an ID prepared by a private organization. The government-issued requirement means that ID's used to approve alcohol sales are officially sanctioned and therefore more accurate and reliable—particularly from the point of view of the licensee. A reasonable interpretation of the statute would include a fake ID purporting to be issued by a government agency.

---

[6] The California Supreme Court cited *Kirby* with approval, but in a case that did not directly raise a section 25660 issue. (*Provigo Corp. v. Alcoholic Beverage Control Appeals Bd.* (1994) 7 Cal.4th 561, 565 [28 Cal.Rptr.2d 638, 869 P.2d 1163].)

To rule otherwise leads to an unreasonable and illogical result. Under the Department's literal interpretation requiring actual issuance, the section 25660 defense would be limited to (1) ID's actually issued by a government agency but which contain false information provided to the agency by the holder of the ID; and (2) ID's actually issued but which have been altered by the holder. For example, this would mean that if a minor sufficiently fooled the DMV into issuing a "valid" license with an incorrect birth date, or a minor had the skill to alter the birth date on a driver's license to evade a licensee's reasonable inspection, the licensee would have a defense under section 25660. But in the case of a minor who presents a fake ID made from whole cloth, that purports to be governmentally issued but is a forgery of sufficient caliber to hoodwink a reasonable person, the licensee has no defense.

■ This distinction is untenable because it is illogical and imparts an unfair meaning to section 25660 that does not provide for strict liability for nongovernmental documents. The licensee should not be penalized for accepting a credible fake that has been reasonably examined for authenticity and compared with the person depicted. A brilliant forgery should not ipso facto lead to licensee sanctions. In other words, fake government ID's cannot be categorically excluded from the purview of section 25660. The real issue when a seemingly bona fide ID is presented is the same as when actual governmental ID's are presented: reasonable reliance that includes careful scrutiny by the licensee. "Bona fide" as used in section 25660 is derived from the centuries old Latin phrase passing into common English meaning good faith. The requirement of reasonable reliance on a government document appearing to be good faith evidence, albeit not genuine, provides the safeguard for the policy of preventing the sale of alcohol to minors.[7] ■ Although the section 25660 defense, as an exception to licensee liability for sale to minors, must be narrowly construed (*Lacabanne, supra,* 261 Cal.App.2d at p. 189), it cannot be construed to reach an absurd and unjust result.

### Reasonable Reliance

The ultimate question is not whether the section 25660 defense is categorically unavailable to the licensees in this case. Rather, the question is whether the licensees reasonably relied on Johnson's fake ID.

■ Whether or not a licensee has made a reasonable inspection of an ID to determine that it is bona fide is a question of fact. (*Hollywood, supra,* 155

---

[7] Appropriate sanctions exist for those involved in false evidence of age schemes. Section 25660.5 provides for criminal sanctions for anyone who sells or furnishes false evidence of majority to a minor. Section 25661 provides for criminal sanctions for any minor who presents false identification to any licensee.

Cal.App.2d at pp. 753–754.) As we noted at the outset, the ALJ found that Salazar did not reasonably rely on the ID. The ALJ viewed the ID as it had been placed in the wallet, and made factual findings based on his observations. We are not only bound by those findings, as we noted above, but we must assume the ALJ's observations of physical evidence support his findings. (See *People v. Buttles* (1990) 223 Cal.App.3d 1631, 1639–1640 [273 Cal.Rptr. 397].)

The ALJ found that Salazar could not see the wording on the ID .that purported to convey government issuance. The ALJ found four obvious areas of observable physical defects in the forgery. Salazar did not remove the ID for closer inspection. Since the licensee bears the burden of proving the defense (*Lacabanne, supra,* 261 Cal.App.2d at p. 189), Salazar's absence from the administrative hearing was a material failure of proof of the defense of reasonable reliance on a seemingly bona fide government document.

 In reaching the contrary conclusion the Board improperly reweighed the testimony, failed to give proper deference to the ALJ's findings of fact, and substituted its own factual conclusions regarding the plausible appearance of the ID. On the record presented to the ALJ, and his findings of fact based thereon, he concluded the licensees did not reasonably rely on the fake ID. We and the Board are bound by that factual determination.

### III. DISPOSITION

For the reasons set forth above, we vacate the decision of the Board and affirm and reinstate the decision of the Department. The parties shall bear their own costs of this writ proceeding.

Stein, J., and Margulies, J., concurred.