Filed 8/24/22 (unmodified opn. attached)
<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL,<br><br>                  Petitioner,<br><br>      v.<br><br>ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD,<br><br>                  Respondent;<br><br>BOGLE VINEYARDS, INC.,<br><br>                  Real Party in Interest. | C094984<br><br>(Alcoholic Beverage Control Appeals Board No. AB-9912)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the published opinion filed on August 17, 2022, be modified as follows:

1.     In the first paragraph of the editorial information on page one, beginning with the words "ORIGINAL PROCEEDING," omit the second sentence beginning with

1

the words "The petition is annulled." Insert the following sentence in its place: "The decision of the Department of Alcoholic Beverage Control is reversed, and the decision of the Alcoholic Beverage Control Appeals Board is affirmed."

2. In the disposition on page 12, omit "The petition is annulled."

3. In the disposition on page 12, omit "(Cal. Rules of Court, rule 8.278(a)(3).)"

This modification does not change the judgment.

BY THE COURT:

_____HULL_____, Acting P. J.

_____MAURO_____, J.

_____KRAUSE_____, J.

Filed 8/17/22 (unmodified opinion)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL,<br><br>    Petitioner,<br><br>  v.<br><br>ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD,<br><br>    Respondent;<br><br>BOGLE VINEYARDS, INC.,<br><br>    Real Party in Interest. | C094984<br><br>(Alcoholic Beverage Control Appeals Board No. AB-9912) |

ORIGINAL PROCEEDING:  Petition for writ of review.  The petition is annulled, the decision of the Department of Alcoholic Beverage Control is reversed, and the decision of the Alcoholic Beverage Control Appeals Board is affirmed.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Andrea R. Austin, Kelcie M. Gosling and Lykisha D. Beasley, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Alan Charles Dell'Ario; Hinman & Carmichael LLP, John A. Hinman and Barbara L. Snider for Real Party in Interest.

1

The Department of Alcoholic Beverage Control (Department) suspended the license of real party in interest, Bogle Vineyards, Inc. (Bogle), for 10 days after finding that Bogle violated Business and Professions Code section 25502, subdivision (a)(2)[1] by furnishing, giving, or lending a "thing of value"—a nonoperational pizza oven—to a Raley's grocery store as part of a promotional display. Bogle appealed the Department's decision to the Alcoholic Beverage Control Appeals Board (Board), and the Board reversed the suspension. The Department then petitioned this court for a writ of review, which we issued. We agree with the Board that the Department erred, and therefore reverse the Department's decision and affirm the Board's decision.

FACTUAL AND PROCEDURAL BACKGROUND

A.      *Factual history*

Bogle is a family-owned winery that has operated for approximately 40 years. It holds a type 2 winegrower's license and has no record of prior discipline.

On July 12, 2018, Agent B. Pender, as part of his enforcement assignment with the Department, entered a Raley's store (store #119) in South Lake Tahoe. During his visit, Pender and another agent observed a point of sale display for Bogle that prominently featured a Bogle-branded pizza oven. The display also had multiple layers of open and unopened cases of Bogle wine and a Bogle-branded pennant. Raley's received the display from its wine supplier, Young's Market (Young's). Young's, in turn, had received the display from Bogle, unsolicited, to put up in Raley's.

The pizza oven was part of a Bogle point-of-sale promotional campaign highlighting pizza month, in which a customer would receive $4 off a pizza with the purchase of a bottle of Bogle wine. For the promotional displays, Bogle purchased 250 Blackstone pizza ovens for a total of $81,734.02. Of those 250 units, Bogle allocated 50

---

[1]      Undesignated statutory references are to the Business and Professions Code.

2

large and 38 small ovens to be used in promotional displays in 88 Raley's stores in California, including Raley's store #119. An individual large oven, like the one at Raley's store #119, costs $280.32. Bogle provided a guidance packet on the promotion for its employees and wholesaler which stated in part that "[i]f buyers are still w[]ary, FYI the ovens 'don't work' without propane AND the regulators can be removed, if needed." It also showed how the pizza ovens were to be set up in the displays. Bogle paid for the pizza oven promotional campaign.

Young's sales representative, Lynne Marie Guerra Jackson, received the pizza oven and prepared the display for Raley's store #119. Jackson did not fully assemble the pizza oven for use in the display, as she did not attach the propane regulator parts included with the oven, and instead kept the parts. As a result, the oven was inoperative when placed in the display at Raley's store #119.

On July 20, 2018, Pender and the other agent returned to Raley's store #119 to discuss the Bogle display, but it had been removed. There was no written contract or agreement regarding the use or disposal of the pizza oven or its parts after the promotion ended. However, the store's management informed Pender that all point-of-sale displays are loans from the vendors, and that Young's had removed the display—including the pizza oven—after the display had been in the store for over a month. Beau Cornell, Bogle's merchandising manager for the promotion, also understood that it was Jackson's responsibility to take the display down when the promotion ended, but he did not know what ultimately became of the pizza oven components.

B.     *Procedural history*

The Department filed an accusation alleging that Bogle, through its agents, did, directly or indirectly, furnish, give, or lend a thing of value, namely, a pizza oven, to an off-sale retail licensee (namely Raley's) in violation of section 25502, subdivision (a)(2). Following an administrative hearing, the administrative law judge (ALJ) issued a proposed decision, sustaining the accusation and recommending a 10-day suspension of

3

Bogle's license. In doing so, the ALJ found that the oven was valued at $280.32, yet Bogle took no steps to render the ovens valueless prior to sending them to Young's, although it did provide a guidance packet instructing Young's that the ovens "don't work" without propane and that the regulator also may be removed "if needed." It further found that Jackson installed the pizza oven at Raley's store #119 without the propane tank regulator tubing, but did assemble the infrastructure, including the pizza stone. The ALJ noted that there were no consequences if Raley's decided to keep the display at the end of the promotional campaign. While it found Bogle did not intend to "gift" the ovens to retailers in exchange for prominent displays in their stores, it concluded that the "net result" was an unlawful furnishing in violation of the statute.

The ALJ further found that "[e]ven absent the parts that were retained by Jackson, the oven had value because the pizza stone was included in the display setup and the infrastructure of the baking area was intact. All that would be needed to have a functioning oven would be for someone to purchase an aftermarket propane regulator tube. Or, the retailer could have just asked for the remaining parts and nothing in the campaign parameters established by [Bogle] would have prohibited this." Thus, it found that Bogle furnished or gave a " 'thing of value' to an off-sale licensed premises in violation of Section 25502[, subdivision] (a)(2)." The Department adopted the proposed decision.

Bogle appealed to the Board, arguing the Department erred when it found Bogle violated section 25502, subdivision (a)(2). The Board agreed, calling the Department's result "absurd." It concluded that the Department's decision that the pizza oven was a "thing of value" was inaccurate as a matter of law and was not supported by substantial evidence because there was no evidence presented that Raley's reassembled the pizza oven or removed the pizza stone for use. It therefore found the Department's result was based on speculation and conjecture and was not within the spirit or letter of the law. It accordingly reversed the Department's decision.

4

The Department petitioned this court for a writ of review, which we issued. (§ 23090.)

DISCUSSION

The Department argues it correctly found that the pizza oven was a " 'thing of value' " under section 25502, subdivision (a)(2), and contends the pizza oven had " 'intrinsic value other than as advertising' " per California Code of Regulations, title 4, section 106 (hereafter, Rule 106). It avers that the Board's interpretation of the statute would lead to absurd results, as it would permit a supplier to furnish any inoperative item, no matter how valuable, to a retailer without violating the statute.

Bogle counters that the inoperative pizza oven was a display, as permitted by Rule 106, and was not an impermissible "thing of value." It further contends that the Department's finding that the oven had value was pure speculation. We agree with Bogle that the Department erred when it found that an inoperative pizza oven, used solely for purposes of a temporary promotional display, was a "thing of value" under the statute.[2]

A.     *Standard of review*

The California Constitution vests the Department with the authority to administer the Alcoholic Beverage Control Act. (Cal. Const., art. XX, § 22; § 23000 et seq.) However, any party aggrieved by a decision of the Department may file an appeal with the Board. (Cal. Const., art. XX, § 22, par. 11; § 23081.) After the Board has issued a final order, the Department's decision is subject to judicial review in the Supreme Court or the Court of Appeal. (§§ 23090, 23090.2.)

---

[2]     The Department's argument that Bogle's answer is unverified, and therefore fails to deny the allegations in the petition, is moot. Bogle filed a notice of errata with a copy of the requisite verification after it filed its answer. (See *Rodriguez v. Superior Court* (2021) 70 Cal.App.5th 628, 642 [district attorney submitted answer verification after filing answer, mooting petitioner's objection], review granted Jan. 5, 2022, S272129.)

The scope of our review is narrow.  (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 100 Cal.App.4th 1066, 1071 (*Deleuze*).)  We review the Department's decision to determine whether "the department has proceeded without, or in excess of, its jurisdiction," "the department has proceeded in the manner required by law," the decision "is supported by the findings," the findings "are supported by substantial evidence in the light of the whole record," or "there is relevant evidence, which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before the department."  (§§ 23084, 23090.2.)

In conducting our review, we must indulge all legitimate inferences in support of the Department's determination.  (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2004) 118 Cal.App.4th 1429, 1437.)  We may not "reweigh the evidence or exercise independent judgment to overturn the Department's factual findings to reach a contrary, although perhaps equally reasonable, result."  (*Ibid.*)[3]

The Department's interpretation of its own rules is entitled to deference and a reviewing court generally will not depart from that interpretation unless it is clearly erroneous or unauthorized.  (*Physicians & Surgeons Laboratories, Inc. v. Department of Health Services* (1992) 6 Cal.App.4th 968, 986-987; *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2017) 7 Cal.App.5th 628, 634.)  However, the interpretation of a regulation, like the interpretation of a statute, is a question of law that we review de novo, and the ultimate resolution of such legal

---

**3**  As the Department notes, section 23090.3 provides that "[t]he findings and conclusions of the department on questions of fact are conclusive and final and are not subject to review."  But section 23090.2 makes clear that we may review, among other things, whether the Department proceeded in the manner required by law and whether its findings are supported by substantial evidence.  (§ 23090.2, subds. (b), (d).)

questions rests with the courts. (*Physicians & Surgeons Laboratories, Inc., supra*, at p. 986.)

B. *Section 25502 and Rule 106*

Section 25502 is part of a statutory scheme referred to as the "tied-house" provisions. (*Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2005) 128 Cal.App.4th 1195, 1206 (*Schieffelin*).) "The drafters of the tied-house provisions believed that if manufacturers and wholesalers were allowed to gain influence through economic means over retail establishments, they would then use that influence to obtain preferential treatment for their products and either the exclusion of or less favorable treatment for competing brands. [Citation.] Legislators were concerned that such practices would lead to an increase in alcohol consumption as retailers adopted aggressive marketing techniques to encourage customers to purchase the alcoholic beverages they stocked. [Citations.]" (*Id.* at p. 1207.)

As relevant here, section 25502, subdivision (a)(2) provides: "(a) No . . . winegrower, . . . California winegrower's agent, . . . or wholesaler . . . shall . . . [¶] . . . [¶] (2) Furnish, give, or lend any money or other *thing of value*, directly or indirectly, to, or guarantee the repayment of any loan or the fulfillment of any financial obligation of, any person engaged in operating, owning, or maintaining any off-sale licensed premises." (Italics added.)

Title 4, section 106 of the California Code of Regulations, in turn, addresses advertising and merchandising of alcoholic beverages. As relevant here, Rule 106 provides: "(a) . . . No licensee shall, directly or indirectly, give any premium, gift, free goods, or other thing of value in connection with the sale, distribution, or sale and distribution of alcoholic beverages, and no retailer shall, directly or indirectly, receive any premium, gift, free goods or other *thing of value* from a supplier of alcoholic

7

beverages, except as authorized by this rule or the Alcoholic Beverage Control Act." (Rule 106, subd. (a), italics added; see *id*. subd. (c)(4).)[4]

C.    *Analysis*

The question before us is whether the Department erred by finding that Bogle furnished a "thing of value" to Raley's, an off-sale licensed premises, in violation of section 25502, subdivision (a)(2), when its distributor temporarily placed an inoperative pizza oven in Bogle's promotional display at Raley's store #119. We conclude the Department's interpretation and application of the statute was erroneous and that its finding that Bogle furnished a "thing of value" to Raley's is not supported by substantial evidence.

Since the plain text of section 25502, subdivision (a)(2) is open to competing interpretations, we turn to legislative history for guidance on what constitutes a "thing of value" under the statute. "[T]he objective of statutory interpretation is to ascertain and effectuate legislative intent." (*People v. Flores* (2003) 30 Cal.4th 1059, 1063.) "To determine legislative intent, we first examine the words of the statute [citation], applying 'their usual, ordinary, and common sense meaning based upon the language . . . used and the evident purpose for which the statute was adopted.' [Citation.]" (*People v. Granderson* (1998) 67 Cal.App.4th 703, 707, quoting *In re Rojas* (1979) 23 Cal.3d 152, 155.) Here, "we take into consideration the policies and purposes of the Alcoholic Beverage Control Act, recognizing that 'the purpose sought to be achieved and evils to be eliminated have an important place in ascertaining the legislative intent.' " (*Schieffelin, supra*, 128 Cal.App.4th at p. 1206.)

---

**4**    The parties disagree about whether the pizza oven qualified as a "display" item or as "promotional material," which are permissible under Rule 106, subdivision (c)(3) and (4), respectively. However, we review the Department's decision, and the Department's decision did not address whether these parts of Rule 106 apply. (See *Deleuze, supra*, 100 Cal.App.4th at p. 1072.)

The tied-house provisions were enacted after the repeal of the Eighteenth Amendment to address issues prevalent before Prohibition, such as "intemperance" and "disorderly marketing conditions." (*California Beer Wholesalers Assn., Inc. v. Alcoholic Bev. etc. Appeals Bd.* (1971) 5 Cal.3d 402, 407.) Specifically, the Legislature sought to prevent large manufacturers and wholesalers from dominating local markets or gaining influence over retailers through economic means, thereby obtaining favorable treatment for their products over competing brands. (*Schieffelin, supra*, 128 Cal.App.4th at p. 1207.)

Consistent with the Legislature's intent, appellate courts considering section 25502, subdivision (a)(2), and the similar provision in section 25500, subdivision (a)(2), have affirmed findings of statutory violations where the "thing of value" created a risk of retailer favoritism towards the supplier. For example, in *Deleuze*, the court agreed with the Department that the manufacturer gave a "thing of value" to a retailer where the manufacturer paid a publisher to supplement the cost of the retailer's exclusive catalogue in exchange for product placement in the catalogue. (*Deleuze, supra*, 100 Cal.App.4th at p. 1079.) It found the winemaker "contributed a valuable and tangible benefit to [the retailer] by participating in paying for the production of its exclusive sales catalog—in essence, a 'virtual' retail establishment." (*Deleuze*, at p. 1075.) Similarly, in *Schieffelin*, the court found substantial evidence supported the Department's finding that a thing of value had been furnished in violation of section 25500, subdivision (a)(2) where an alcoholic beverages provider gave a marketing-cost subsidy to a retailer, Chevys Restaurants, in exchange for prominent point of sale materials and promotional items placed at Chevys restaurants and other locations. (*Schieffelin, supra*, 128 Cal.App.4th at pp. 1202, 1210-1212.)

Thus, in both *Schieffelin* and *Deleuze*, the suppliers gave money—a "thing of value"—to a retailer, in exchange for favorable marketing or promotional treatment. Both cases held that this exchange, particularly in view of the ongoing relationship

9

between the retailer and supplier, " 'could easily lead to the kind of influence of a supplier over a retailer the [tied-house] statutes were intended to prevent,' " by causing the retailers to favor the products of suppliers who choose to sponsor the retailer's promotional events or subsidize their catalogues. (*Schieffelin, supra*, 128 Cal.App.4th at p. 1211, citing *Deleuze, supra*, 100 Cal.App.4th at p. 1075.) Here, unlike in *Schieffelin* and *Deleuze*, and in contrast with the Department's findings, we cannot conclude that allowing a distributor to temporarily place an inoperative pizza oven in Bogle's display provided a "valuable and tangible benefit" to Raley's in violation of the statute. (*Deleuze*, at p. 1075.)

In its decision, the Department found that, even absent the missing parts, "the oven had value because the pizza stone was included in the display setup and the infrastructure of the baking area was intact." However, the finding that the unassembled oven "had value" within the meaning of section 25502 is not supported by substantial evidence in the record. As reflected in the legislative intent and the case law, the unassembled pizza oven and pizza stone would have value only if Raley's obtained, or could obtain, some use from it that could benefit Raley's and evince favoritism towards Bogle. Yet it is undisputed that Raley's did not use any part of the pizza oven infrastructure or pizza stone while it was on display. Instead, the pizza oven, which was "designed to be used outdoors with a portable propane tank as a fuel source," remained indoors, without a propane tank or regulator, and was surrounded by cases of Bogle wine within a display. There also is no evidence that Raley's retained the partially assembled pizza oven after it was removed from the display. Indeed, once the promotion ended, the pizza oven was removed from the store, presumably by a Young's employee, with its final whereabouts unknown. Thus, there is no evidence that Raley's utilized, derived any benefit from, or assigned any value to the pizza oven or pizza stone. As such, substantial evidence does not support the Department's finding that the infrastructure and pizza stone were an impermissible "thing of value" under the statute.

10

The Department further found that the oven was a thing of value because someone could have purchased the missing parts or asked for the remaining parts.  But, again, there is no evidence that Raley's (or anyone) did, in fact, purchase, request, or obtain the missing parts that would make the pizza oven operational.  The Department's supposition that Raley's theoretically *could* have done so, rendering the oven potentially useable and therefore potentially of some value, is speculation and therefore not substantial evidence of a violation.  (*People v. Dennis* (1998) 17 Cal.4th 468, 508 [" '[S]peculation is not evidence, less still substantial evidence' "].)

In sum, there is no evidence that Raley's used the inoperative oven, retained the oven or any of its parts for later use, or secured any parts necessary to make the oven work.  As a result, the pizza oven was not, as a legal matter, a "thing of value" because it provided no benefit, and was of no use to Raley's other than as advertising or promotional material.  Indeed, there is no evidence that Raley's attached any significance to the oven, nor could it, given that it was kept nonoperational, unused, and embedded in the store display until it was removed.  Thus, the letter and purpose of the statute would not be met by finding the oven constituted a "thing of value" under section 25502, subdivision (a)(2).  (§ 23090.2, subds. (b), (d).)[5]

---

[5]     We need not address the Department's argument that its decision is not an underground regulation.  This issue was not raised at the administrative hearing and thus has been forfeited.  (*Araiza v. Younkin* (2010) 188 Cal.App.4th 1120, 1126-1127.)  To the extent we have discretion to consider the issue, we decline to do so as we reverse the Department's decision and affirm the Board's decision on other grounds.  (*Ibid.*)

11

## DISPOSITION

The Department's decision is reversed, and the decision of the Board reversing the Department's decision is therefore affirmed.  The petition is annulled.  Bogle, as prevailing party, shall recover its costs of this proceeding.  (Cal. Rules of Court, rule 8.278(a)(3).)


                                   KRAUSE            , J.


We concur:



_____ HULL _____ , Acting P. J.



_____ MAURO _____ , J.

12